[Civ. No. 3521. Third Appellate District.—May 19, 1928.]

RUTH HUFF, a Minor, etc., Respondent, v. COMPTON CITY GRAMMAR SCHOOL DISTRICT et al., Appellants.

Everett W. Mattoon, County Counsel, and J. A. Tucker, Deputy County Counsel, for Appellants.

Joseph Scott, A. G. Ritter and Leo B. Ward for Respondent.

FINCH, P. J.—The plaintiff was given judgment against the defendant District for damages resulting from serious burns alleged to have been caused by the negligence of the defendants. The School District has appealed upon the judgment.

The evidence shows that upon the school grounds, and about twenty feet from the steps leading into a lunch shed, was located what is termed by the parties an incinerator, in which "waste papers and trash accumulated on the grounds were disposed of." This incinerator was in the form of an ordinary garbage can, "from thirty to thirty-six inches high." There was a lid over the top and the sides were perforated with numerous round holes about the size of the average index finger. The can was located on a mound of ashes and rubbish about six to eight inches in height and about "six feet across." It was in a

portion of the grounds frequented by the school children. "The children had to go by there when they went to the playground. They passed there as they came out from the buildings." "There were no protecting mechanical arrangements around the incinerator in any way." The school grounds were about seven hundred by six hundred feet in area, upon which there were two school buildings and "some other buildings." The grounds were all "used as a playground by the children except what was covered by the buildings." At about 1:15 o'clock in the afternoon of the day of the accident the janitor "filled the incinerator about two-thirds full" with lunch bags and papers and set them on fire. He remained there for about five minutes "until the flames disappeared." There were "smouldering pieces of paper in the incinerator" when he left and "smoke was coming out." At 3 o'clock that afternoon the plaintiff, then nine years of age, and another girl of about the same age "came out at recess . . . to play hop-scotch." The latter testified:

"We made a hop-scotch and then we were going to start to play. Ruth was first and she wanted to get her glass. She went to find one. She went to the incinerator. She went up to pick up a glass. When she stooped over, her dress caught fire. Her back was to the incinerator. . . . You could see fire in it. . . . Q. Was it coming out of those little holes? A. Yes."

There is testimony that the location of the incinerator had not been changed for at least eighteen months prior to the accident. The janitor testified that he had been accustomed to burn, "every day, in the same incinerator, approximately the same amount of trash of the same character as that trash was. It took about one-half hour to burn the trash up so that there were no flames. . . . It would not consume the entire amount—it would leave a kind of charred coals in the center, but the loose paper and everything would be burned out so that there would be no flames breaking through. Sometimes the charred debris or refuse would remain three or four hours—sometimes remained all night, depending upon the nature of the stuff that was put in there."

Section 2 of chapter 328 of the Statutes of 1923 (Stats. 1923, p. 675), reads as follows:

"Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition.''

█ Appellant contends that the incinerator was not dangerous in itself, but dangerous only when it contained fire and was left unguarded and that therefore the evidence does not show a ''dangerous or defective condition of . . . grounds, works, and property'' of the defendant. But the evidence shows that the incinerator was maintained for the sole purpose of burning rubbish therein and that it had been daily used for that purpose for many months. The defendants maintained the fire in the incinerator as well as the incinerator itself. If fires had been kept constantly burning therein no one would contend that the District could escape liability on the ground that the incinerator would not be dangerous without fire therein. The fact that fire was maintained therein only part of the time can make no difference as to liability. It was necessary for the children to pass the incinerator on their way from the school building to the playground. It would be a very narrow construction of the statute to hold that the case made by the plaintiff does not come within its terms. It needs no argument to show that the burning of rubbish in the incinerator while little children were playing around it constituted negligence.

█ Appellant contends that the evidence does not show that the Trustees knew of the maintenance of the incinerator in the manner described. The evidence shows that the District Superintendent of the defendant was a

"person having authority to remedy such condition" and that he "had knowledge . . . of the defective or dangerous condition, . . . and failed or neglected, for a reasonable time after acquiring such knowledge, . . . to remedy such condition." He was called as a witness by defendants and testified: "My duties were . . . to give the teachers and janitors instructions as seemed necessary. . . . My duties as regards the school buildings and school grounds in so far as they were to be kept clean and in repair, was that I was to report those things to the Trustees and see that the school building and school grounds were kept in a clean, sanitary and wholesome condition. I was to a certain extent responsible in a general way for what you might call the condition of the grounds in so far as an employee is responsible to his employer for the condition of the building that he might be superintendent of. I followed whatever instructions the trustees gave regarding the building and grounds and when they did not give instructions, I was supposed to use my own discretion. . . . I determined upon what portion of the school grounds the incinerator should be located. . . . There were at that time two distinct school buildings on the property. It was not my duty to act as principal as well as superintendent. I was superintendent of both schools and had a principal in each one of those buildings."

The Trustees of the District and the District Superintendent are named as defendants. Section 1609 of the Political Code provides that boards of trustees "may employ a district superintendent for one or more schools employing eight teachers or more under their control." Paragraph III of the complaint as originally filed alleged that on or about the thirteenth day of March, 1924, "through the negligence and carelessness of the agents and employees of said defendants herein, an incinerator situated and located on the playground of said Compton City Grammar School was so negligently and unlawfully attended and operated by the employees of said defendants that a fire was permitted to be burning in said incinerator contrary to section 152 of the ordinance of the city of Compton; . . . that as a direct and proximate result of the negligent and unlawful operation of said incinerator and while said incinerator was unattended and while the

plaintiff herein, Ruth Huff, was playing upon the school grounds, fire shot out from said incinerator," causing the alleged injuries. The defendants' answer to said paragraph III of the complaint admits the location of the incinerator on the school grounds and denies, on information and belief "that a fire was burning in said incinerator due to the negligence and/or carelessness of the agents and/or employees of said defendants," or "that any injuries plaintiff may have received were a direct and/or proximate and/or any result of the alleged negligent and/or unlawful and/or any operation of said incinerator by the agents and/or employees of the defendants herein or any of them." Nearly three months before the trial the plaintiff, by leave of the court, served and filed an amendment to the complaint, by which amendment a new pargaraph was substituted. for the original paragraph III thereof. The amendment alleged:

"That at said time and place said defendants, their servants, agents and employees, were negligently, recklessly and carelessly maintaining and allowing to be maintained under the direction and control of said defendants, and with the knowledge of said defendants, an incinerator for the burning of rubbish, papers and trash, said incinerator being situated and located on the playground of said Compton City Grammar School where the children attending said grammar school would come in contact with said incinerator; that said incinerator was at all times a dangerous agency and was so known to said defendants, but that said defendants nevertheless maintained, constructed, and allowed to be maintained and constructed said dangerous agency and said incinerator on said school grounds; that said incinerator did not have any shield or guard around the same to prevent persons from coming in contact therewith, all of which was to the knowledge of said defendants; that at said time and place said defendants, their servants, agents and employees so negligently, carelessly and unlawfully operated and attended said incinerator that they allowed and caused rubbish. trash and papers to be burned in said incinerator at said time and place, so that the children present on said playgrounds could come in contact with said incinerator, and so that said incinerator became so hot as to be capable of inflicting

burns upon anyone coming in contact therewith, and so that fire shot forth from said incinerator and the material being burned therein, and so that said incinerator thereby became a dangerous agency and instrumentality, all to the knowledge of said defendants; that at said time and place, and as a direct and proximate result of the negligent, unlawful, careless and reckless maintenance, construction and operation of said incinerator, and the failure on the part of said defendants to keep the same properly guarded by shields or by an attendant, said plaintiff, Ruth Huff, while playing upon said school grounds, came in contact with said incinerator, and with the fire issuing therefrom while said incinerator was burning, and as a direct and proximate result of said negligence, carelessness and recklessness on the part of said defendants, received the burns herein complained of; that at said times herein mentioned said defendants had knowledge and notice of the maintenance and existence of said incinerator, and of the negligent, unlawful, reckless and careless operation and maintenance of said incinerator by the servants, agents and employees of said defendants, and of the fact that said incinerator was not guarded by any shields to prevent injury to the children who might be playing nearby, and was not attended by any employee to prevent the children from coming in contact therewith while said fire was burning, and had knowledge of the fact that said incinerator was being used during the hours when children were on said playgrounds, and might come in contact therewith.''

The defendants failed to answer this amendment to the complaint. The complaint as originally filed counted on the negligent acts of the agents and employees of the defendants in the operation of the incinerator, while the amendment alleges the negligent maintenance of a dangerous agency or condition on the school grounds, of which the defendants had knowledge. The allegations, therefore, that the incinerator was maintained by the defendants, that it was a dangerous agency, and that the defendants had knowledge of its maintenance and dangerous character stand admitted by the pleadings. The dangerous character of the situation was such as to demand its immediate remedy. Both the Board of Trustees and the District Superintendent had authority to remedy the condition,

■ Appellant contends that the plaintiff was guilty of contributory negligence. She testified on cross-examination: "I saw the incinerator there before. It was there all the time. I did not see any fire in it the day I went up there. I was not looking for fire. I don't know wh ther I looked at the incinerator or not. My mother and father had told me to keep away from fire. . . . I was not supposed to go near the incinerator. I never went to the incinerator. I went over to the ashes about three feet away from the incinerator." Plaintiff's teacher gave her class instruction "about safety first rules . . . about three times a week." She had warned the class, including the plaintiff, three or four times prior to the day of the accident, "of the danger of playing near the incinerator." In determining the question of contributory negligence it was the duty of the jury to take into consideration the age and inexperience of the plaintiff. Whether the plaintiff was guilty of contributory negligence, under the circumstances disclosed by the evidence, was clearly a question of fact for the jury.

■ The court gave certain instructions which, standing alone, would authorize a verdict in favor of the plaintiff for injuries caused by a mere isolated act of negligence by an employee of the District, even though such act had no relation to any dangerous or defective condition maintained by the District. The court also instructed the jury, at the request of the defendants, substantially in the language of said section 2 of the statute. The complaint, as amended, is based on the maintenance of the dangerous condition in the manner stated, and not on a mere act of negligence of an employee. Such maintenance was not only admitted by the pleadings, but proved without contradiction. The evidence shows without conflict that the District Superintendent at all times had knowledge thereof, and the pleadings admit that all the defendants had such knowledge. Under such circumstances, it does not appear that the District could have been prejudiced by the instructions. In fact, it appears, as a matter of law, from the allegations of the complaint which are not denied and the uncontradicted evidence given at the trial, that the appellant was maintaining a dangerous condition upon its school grounds, with the knowledge of its Trustees and its Superintendent, and that they had authority to remedy the condition. The evidence

also shows without conflict that the plaintiff's clothing was ignited by coming in contact with the fire in the incinerator, and the jury has found, on sufficient evidence, against the plea of contributory negligence. In that state of the record it is clear that the alleged error in the instructions has not resulted in a miscarriage of justice.

Respondent contends that the plaintiff was entitled to judgment, without showing knowledge of the dangerous condition on the part of the Trustees or Superintendent, under the provisions of section 1623 of the Political Code. That section provides: "Boards of school trustees . . . are liable as such in the name of the district . . . for any judgment against the district on account of injury to any pupil arising because of the negligence of the district or its officers or employees." Appellant contends that this section does not authorize an action for damages by an injured pupil on account of the negligence of an employee, but only creates a liability "for a judgment against the district" recovered pursuant to the provisions of the aforesaid Statute of 1923. In view of the conclusion already reached and stated, it is unnecessary to consider whether section 1623 is applicable to the facts of this case.

The judgment is affirmed.

Plummer, J., and Bartlett, J., *pro tem.*, concurred.