[L. A. No. 15398. In Bank.—December 23, 1935.]

WM. F. ADAMS, as Administrator, etc., Plaintiff and Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Defendants; COUNTY OF SAN BERNARDINO, Defendant and Appellant.

William F. Adams, *in pro. per.*, and Duckworth & Harrison for Plaintiff and Appellant.

Stanley Mussell, District Attorney, and Swing & Swing for Defendant and Appellant.

THE COURT.—After examination of the entire record in this matter, we hereby adopt as and for the decision of this court, with such additional discussion as will hereinafter appear, the following portions of the opinion prepared by Mr. Justice Jennings when the cause was pending before the District Court of Appeal, in and for the Fourth Appellate District:

"This action was instituted by the administrator of the estate of Leo R. Schwanekamp, deceased, for the purpose of recovering compensatory damages for the death of said Schwanekamp which was alleged to have been caused by the joint negligence. of the railroad company and the County of San Bernardino. The plaintiff's complaint also sought recovery of damages for loss of property and for burial expenses of the deceased. At the conclusion of the trial the court, sitting without a jury, absolved the railroad company from any liability to plaintiff and rendered judgment in plaintiff's favor against the defendant county in the amount of $1,500 for the wrongful death of Schwanekamp and permitted recovery of the sum of $240 for damages to an automobile which the deceased was operating at the time the accident which resulted in Schwanekamp's death occurred. From this judgment both plaintiff and the defendant County of San Bernardino have appealed. The latter appeal will herein be first considered. A statement of the undisputed facts disclosed by the evidence is necessary for a proper understanding of the various points urged on this appeal.

"At some time between 10 o'clock and 10:30 o'clock in the evening of August 24, 1927, Schwanekamp and a woman companion set out from the city of Redlands to drive to the city of Los Angeles in a Chevrolet coupe automobile which belonged to Schwanekamp and which he drove on the journey. In leaving Redlands they proceeded in a westerly direction on a county highway of the County of San Bernardino which extended along a street known as Barton avenue. At some time between 11 o'clock and 11:30 o'clock of the same evening Schwanekamp and his companion approached a right of way of the Southern Pacific Company which intersected Barton avenue. This crossing is known as the Bryn Mawr crossing. The railroad right of way is 100 feet in width. At the point of intersection there are five tracks on the right of way, the main track of the Southern Pacific Company and four side tracks. Easterly from the right of way, Barton avenue, at the time of the accident, was paved approximately 40 feet in width to a point on the north side of said avenue, which was between 15 and 21 feet from the easternmost rail on the railroad crossing. The street was paved across the railroad right of way to a width of 28 feet. West of the right of way the street was 28 feet in width and was paved to a width

of approximately 18 feet. During the month of January, 1926, the pavement on Barton avenue east of the railroad tracks had been extended on the north side for a distance of approximately 12 feet up to a point which was between 15 and 21 feet from the most easterly rail of the railroad tracks. The result of this widening process was to leave unpaved on the north side of the avenue east of the railroad crossing a strip approximately 12 feet in width and between 15 and 21 feet in length. After the pavement had been thus widened no barrier or fence or sign was placed at the point by the county for the purpose of diverting travel from the unpaved portion of the street or to warn drivers on the highway that they were approaching a railroad crossing whereon the pavement was narrower than that of the highway. On the west side of the crossing at the south side of Barton avenue there was a railroad crossing sign maintained by the railway company and on the north side of the avenue west of the crossing there was a white fence. On the railroad crossing the rails of the tracks were flush with the pavement on that portion of the crossing which was paved. North of the paved portion the rails extended upward for a distance of about 5½ inches above the surface of the surrounding ground. Schwanekamp was driving his automobile along the north side of the avenue as he approached the railroad crossing. When his automobile reached the crossing one or more of the front wheels struck the first protruding rail which was encountered. This sudden contact caused both persons in the automobile to be thrown from it. Schwanekamp was thereby injured so severely that he died two days later. The automobile continued on its course for some distance and was overturned and almost completely wrecked.

"The contentions of the appellant County of San Bernardino on its appeal from the judgment may be summarized as follows: Respondent sought to impose liability upon appellant and its codefendant, the Southern Pacific Company, for the alleged wrongful death of his intestate on two grounds. These were that they were guilty of negligence, first, in failing to have paved the railroad crossing to the same width that the highway east of said crossing was paved and, second, in failing to have erected a barrier or some obstruction, or a sign which would have conveyed warning to travelers on the highway that the railroad crossing was not paved to the same

width as the highway and that, due to the narrower paving and exposed rails, they were approaching a place of danger. No liability could be imposed upon the county for failure to have more extensively paved the railroad crossing. The evidence produced during the trial showed that the Southern Pacific Company was the owner of the right of way and had exclusive control over it and that the county had no authority to enter upon such right of way and to pave or otherwise to improve it. The liability of the appellant county must therefore rest upon the charge that it was negligent in having failed to erect a barrier or sign which would have conveyed warning to travelers on the highway that they were approaching a railroad crossing whereon the pavement was narrower than on the highway. The alleged negligence of appellant in the last-mentioned respect does not amount to a charge that the highway itself was defective in any respect or that the extension of the pavement on the highway east of the railroad crossing created a condition that was inherently dangerous. The liability of appellant is based upon its alleged negligence in having failed to perform a duty which it owed to the traveling public. Appellant is not an insurer of the safety of the highways under its control. The primary question to be answered is whether it may be declared that a reasonably prudent person should have foreseen that the failure to warn by the erection of a sign or barrier would be reasonably certain to endanger the safety of persons rightfully using the highway. The conditions shown by the evidence to have existed at the time of the accident indicate that this question should have been answered in the negative. It was shown that the protruding rails on the unpaved portion of the railroad crossing were visible to drivers of motor vehicles approaching the crossing from the east for a distance of at least 2000 feet during the daytime and for a distance of at least 200 feet at night if the automobiles of such drivers were equipped with efficient headlights properly illuminated. Even though the above-stated question should be answered in the affirmative the burden rested upon respondent to show that appellant's negligence was proximate cause of the death. This burden was not sustained. Contributory negligence of the deceased was pleaded and proved as a proximate cause of death and the property damage shown to have resulted from the accident. The evidence conclusively established that

the place of danger was clearly visible to an automobile driver at night if his automobile was equipped with proper headlights properly illuminated. If it be assumed that respondent's intestate did not see the narrower pavement on the railroad crossing and the adjacent protruding rails of the railway tracks he was himself chargeable with his failure in this regard, a failure which constituted negligence directly contributing to the happening of the accident that cost him his life. These contentions merit careful consideration.

"It is conceded that liability is here sought to be imposed on appellant County of San Bernardino in accordance with the provisions of section 2 of Act 5619 of the General Laws of California (Stats. 1923, p. 675; Deering's Gen. Laws, 1931, Act 5619). So far as is here relevant, this statute provides that 'Counties, . . . shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways . . . in all cases where the governing or managing board of such county . . . or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway . . . and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition.'

"It is evident from the above-quoted language that Act 5619 is a general act, defining the liability of a county and the other public bodies named therein to the general public and specifying the conditions under which said liability may attach (*Ahern* v. *Livermore Union High School District,* 208 Cal. 770, 782 [284 Pac. 1105]). One of the important conditions precedent to the imposition of such liability is the requirement that the governing or managing board of the county shall have had knowledge of the defective or dangerous condition of the street or highway which is alleged to have been the proximate cause of the injuries sustained. The question of knowledge which is often an important feature in actions based upon the above-mentioned statute is not here present. It is conceded that appellant had notice of the condition which is alleged to have been a dangerous condition. Nor

is it disputed that the highway whereon the deceased was traveling at the time he was fatally injured was a public highway under the control of appellant. The important primary question in the case is whether or not it was satisfactorily shown that there was in fact any defective or dangerous condition of the highway which appellant should have remedied. A consideration of this question in effect amounts to a consideration of appellant's contention that the trial court's finding that appellant was negligent is lacking in evidentiary support. A consideration of this contention requires a summary of the evidence which bears upon the question.

"The only evidence presented to the trial court which showed the circumstances immediately preceding the happening of the accident consisted of the testimony of the woman who was then riding in the automobile operated by the deceased as his guest. The testimony of this witness may be summarized as follows: The witness and deceased set out from Redlands on the return journey to Los Angeles between 10 o'clock and 10:30 o'clock in the evening in a Chevrolet coupe which was the property of deceased and was being then operated by him. As they proceeded in a general westerly direction along a highway which neither had ever before traversed, they approached the scene of the accident at approximately 11:30 p. m. The night was dark. The headlights of the automobile were burning and illuminated the roadway in front of the automobile for a distance of at least 200 feet. The automobile was proceeding along the north side of the street. For some distance prior to arriving at the scene of the accident the automobile was operated at a speed of approximately 30 miles per hour. When the vehicle arrived at the point where the paving on the north side of the highway terminated the speed was decreased to about 25 miles per hour and as it approached nearer to the railroad crossing the driver applied the brakes with the result that the speed of the automobile was further decreased to about 15 miles per hour. The driver also caused the car to swerve slightly to his left. His efforts to prevent the wheels of the automobile from coming in contact with the projecting rails of the railroad were unsuccessful. At the time the wheels of the automobile struck the rails both doors of the coupe flew open and both occupants of the machine were thrown from it. For a distance of approximately 150 feet east

of the railroad crossing the highway made a slight ascent. The witness was awake and was looking ahead in the direction in which the automobile was proceeding. When the car arrived at a point about 15 feet east of the place where the pavement on the north side of the highway came to an end she observed that they were approaching the end of the pavement. She had theretofore observed a railroad crossing sign which was on the south side of the highway and west of the railroad crossing and a white fence which was on the north side of the highway and likewise west of the railroad crossing and was aware that the machine was approaching a railroad crossing. She did not, however, then observe the projecting rails of the railroad and did not see such rails until the coupe was very near the easternmost rail and 'almost ready to hit' this rail.

"It is obvious that the basis for respondent's claim that the fatal accident was caused by the negligence of appellant rests upon the contention that the failure of appellant to have erected a barrier or other obstruction or a warning sign at or near the point where the pavement terminated on the north side of Barton avenue created a dangerous condition. Appellant maintains that no duty rested upon it to erect such obstruction or sign unless it can be declared that appellant should have foreseen that automobile drivers using ordinary care for their own safety would not perceive the projecting rails in ample time to avoid striking them. This suggestion is so closely interwoven with the contention that the evidence showed that the deceased was guilty of contributory negligence that it will be considered along with the contributory negligence contention. With respect to the general charge that the evidence failed to show that appellant was guilty of negligence in having failed with knowledge of the situation to erect a barrier or sign, it must be conceded that this question was one of pure fact to be determined by the trial court. We are not constrained to disturb the finding of negligence upon the facts disclosed by the record.

"In support of the contention that the finding negativing contributory negligence by the deceased is not supported by the evidence it is declared that there was uncontradicted evidence which showed that the rails were clearly visible at night for a distance of 200 feet east of the railroad crossing and it is therefore argued that the testimony of the

above-mentioned witness to the effect that she did not see the rails until the automobile in which she was traveling was 'almost ready to hit' the easternmost rail necessarily gave rise to the inference that she was not giving proper attention to what was ahead. In other words, the effort is made to apply the principle that one is under the duty of seeing that which is visible. The chief difficulty which arises in attempting to apply the principle is that it must be applied, not to the witness, but to the driver of the automobile to recover damages for whose death this action was instituted. If it be conceded that the principle is applicable to the passenger, a concession that is dependent on the inference that she must have seen what was visible, it does not follow therefrom that it must be declared that the driver must have seen the projecting rails because they were generally visible at night for a distance of 200 feet east of the railroad crossing. We may not overlook the general presumption that one who is operating an automobile on a highway will employ ordinary care for his own safety (*Smellie* v. *Southern Pacific Co.,* 212 Cal. 540 [299 Pac. 529]; *Gorman* v. *County of Sacramento,* 92 Cal. App. 656 [268 Pac. 1083]). Furthermore, there was no showing that the conditions which existed at the time when other witnesses testified they could see the rails for a distance of 200 or more feet east of the railroad crossing in the nighttime were the same as the conditions which prevailed at the time of the accident which formed the basis of this action. We think, therefore, that it did not sufficiently appear that the projecting rails were necessarily always visible in the nighttime for a distance of at least 200 feet so that we must declare that the trial court committed reversible error in failing so to find and in further failing to find that the deceased was himself guilty of negligence in not having seen that which was visible (*Bennett* v. *Kings County,* 124 Cal. App. 147 [12 Pac. (2d) 47]).

"The negligence of the county for which recovery was here permitted was, as heretofore mentioned, the failure so to have obstructed the highway by means of a fence or guard rail or in some other manner to have conveyed information to the drivers of automobiles that a railroad crossing was in close proximity and that the pavement over such crossing was narrower than the highway up to the point where the paving on the north side of such highway ended. It is undenied

that the deceased operated his automobile on his right-hand side of the highway as he approached the railroad crossing. There was evidence that he was driving at a moderate rate of speed as he proceeded up the slight grade which brought him nearer to the crossing and that he decreased this rate of speed twice, the second diminution occurring when he applied his brakes at about the time he arrived at the unpaved portion of the highway and amounting to a reduction of approximately half the speed at which he was then operating the automobile. The evidence also indicates that he attempted to swerve the automobile to the left for the purpose of avoiding the projecting rails, that he was unsuccessful in so doing, and that the right front wheel of the coupe came in contact with the easternmost rail which projected some $5\frac{1}{2}$ to 7 inches above the surface of the ground at that point. The evidence also showed that the sudden striking of the right front wheel of the automobile with the projecting rail caused both doors of the automobile to fly open and the deceased to be thrown from the coupe, thereby suffering injuries which later caused his death. The questions of the alleged negligence of the County of San Bernardino in the above-mentioned regard and the alleged contributory negligence of the deceased were questions which were to be answered by the trial court from the facts and circumstances disclosed by the evidence presented to it. The court, unaided by a jury, has performed this duty and has answered the questions adversely to the appellant county and we do not find ourselves impelled to declare that it has arrived at an erroneous conclusion from the record here presented.

"The appellant county points to the fact that the evidence presented during the trial showed that no other accident of the character which caused the injuries here complained of had occurred at the Bryn Mawr crossing for a period of two years. From this it is argued that the trial court evidently accepted the evidence of the accident which resulted in Schwanekamp's death as proof of the fact that the failure to obstruct the highway or to post a warning sign constituted negligence. In thus attacking the finding of negligence it is confidently asserted that the mere fact that an accident occurred was not sufficient alone to raise a presumption of negligence.

"With respect to this particular contention, it may be conceded that proof of the occurrence of the accident might not, standing alone, suffice to raise a presumption of negligence. It was, however, some evidence which tended to show that a dangerous condition with respect to the highway existed at Bryn Mawr crossing (*Hook* v. *City of Sacramento,* 118 Cal. App. 547, 552 [5 Pac. (2d) 643]). Appellant's evidence that no similar accident had occurred for a number of years prior thereto was addressed to the proposition that the place was not dangerous. It is apparent that upon this point, therefore, the evidence was conflicting and that the trial court· resolved the conflict in respondent's favor. No citation of authorities is required to support the familiar rule of appellate procedure that a finding of fact which is based on conflicting evidence may not be disturbed by a reviewing court. Furthermore, it must be observed that the mere fact of injury was not the only evidence before the trial court which tended to show that a dangerous condition existed at the crossing. The court also had the testimony of the deceased man's companion at the time the accident occurred which portrayed the circumstances immediately surrounding the occurrence of the accident.

 "There is some suggestion that because of the fact the respondent originally joined certain officers of San Bernardino County as defendants in the action and judgment was rendered in favor of these officers upon the sustaining of a general demurrer in their behalf to the complaint which judgment was affirmed on appeal, therefore the judgment against appellant may not here be affirmed since the county's agents who were responsible for the condition of county highways have been thus absolved of liability. This argument is based on the familiar doctrine of agency that in order to hold the principal liable for the agent's tort the liability of the agent must first be established.

"The record shows that when this action was first instituted James W. Cole, the highway commissioner of San Bernardino County, and Charles Long, a district highway commissioner, were joined as defendants therein and that recovery of damages was sought against them jointly with their codefendants, the appellant county and the Southern Pacific Company. The above-named officers of appellant and appellant demurred to the complaint. The demurrer was

sustained with leave granted to respondent to amend the complaint. Thereafter, on application of respondent the order sustaining the demurrer of the officers of the county and granting leave to amend was so modified that leave to amend was eliminated from the order. Thereupon judgment dismissing the action as to the officers of the county was duly entered. At a somewhat later date, respondent having failed to amend his complaint so far as the appellant county was concerned within the time specified in the court's order sustaining the demurrer, judgment of dismissal was entered in favor of appellant. From both of the above-mentioned judgments respondent herein, William F. Adams, appealed. On this appeal the judgment dismissing the action as to the officers of appellant was affirmed on the ground that Adams, having requested that the demurrer of the county officers be sustained without leave to amend, necessarily consented to the rendition of the judgment in their favor and could not therefore object to the judgment by appealing from it. The judgment dismissing the action as to the County of San Bernardino was, however, reversed on the ground that the complaint stated a cause of action against the county (*Adams* v. *Southern Pacific Co.*, 109 Cal. App. 728 [293 Pac. 681]).

"We think that it may not now be successfully urged that because the respondent consented to the entry of a judgment in favor of the county officers on the sustaining of a general demurrer to his complaint he thereby lost his right to seek a recovery against the county. It is obvious that so far as the county is concerned his cause of action is based on the provisions of section 2 of the above-mentioned Act 5619. The allegations of the complaint show that such was the case and the record indicates that the suit was tried on the theory that the county's liability could only be maintained by virtue of this particular statute. This section of the act does not purport to give a right of action against any officer of a county. Its scope is limited specifically to conferring a right of action against certain designated public corporations for specific acts of negligence relating to a dangerous or defective condition of public streets, highways, buildings, grounds, works and property. The scope of the section is further restricted by the limitation that knowledge or notice of the defective or dangerous condition shall be a prerequisite to the imposition of liability. As was said by Mr. Justice Lang-

don in *Watson* v. *City of Alameda*, 219 Cal. 331, at 333 [26 Pac. (2d) 286] : 'The municipality is not, under this statute, liable in the same manner as a private corporation, for negligence of its employees; nor is it enough to show a dangerous condition of property. The municipality must have had notice and have failed to exercise its opportunity to remedy the condition. The theory of the act seems to be that liability is imposed not alone for the dangerous condition, but for the failure to remedy it, upon knowledge or notice thereof. The elements of knowledge or notice are logically essential to show culpability in failure to remedy the condition, and proof of one or the other is necessary to recovery.' It may further be observed that the liability of public officers, as distinguished from public corporations, for injuries resulting from the defective or dangerous condition of a public street or highway and the conditions under which such liability may be imposed are declared by another statute, to-wit: the act of May 18, 1919 (Stats. 1919, p. 756; Deering's Gen. Laws, 1931, Act 5618). See *Shannon* v. *Fleishhacker*, 116 Cal. App. 258, 261 [2 Pac. (2d) 835].''

We cannot accept the remaining portions of the District Court of Appeal opinion dealing with the plaintiff's appeal from the judgment in so far as it fails to allow recovery for burial expenses aggregating $1164.02. The trial court found that the burial expenses were paid by the Wisconsin administrator "for and in behalf of the estate of [decedent] and in behalf of said Barney Schwanekamp, sole heir of said decedent and sole distributee of said estate". This finding is supported by evidence, introduced by way of deposition, to the effect that the Wisconsin administrator had paid the same because the father and sole heir of decedent was practically destitute and unable to personally discharge the same and had requested the administrator to care for the matter for him. The trial court further found that the several items included in the burial expenses "were reasonable and proper". It improperly concluded, however, that they were "not proper items to be allowed" in this action. It is now settled in this state, and appears to be supported by the weight of authority elsewhere, that in an action for wrongful death the beneficiaries may recover burial expenses which have been paid by them or for which they are liable. (*Koehl* v. *Carpenter*, 47 Cal. App. 642, 646 [191 Pac. 43];

*Little* v. *Yanagisawa*, 70 Cal. App. 303, 308 [233 Pac. 357]; 17 C. J. 1338, secs. 215 and 216.)

We are not impressed with the argument that the funeral expenses here involved were not personally paid by the beneficiary for whom this action is prosecuted, but were discharged by the application of the proceeds of a certain insurance policy on the life of the decedent and payable to his estate. As intimated above, the father and sole beneficiary of the decedent was financially unable to personally and directly pay the funeral expenses and requested the administrator to care for them. The method adopted for the payment of the burial expenses was apparently the only one available to the decedent's father and, of course, served to diminish the value of the estate coming to him as sole heir. We perceive of no sound reason why, under the circumstances, he should not recover such funeral expenses just as he would had they been personally and directly paid by him.

The judgment is reversed, with directions to the court below to amend its findings, conclusions of law and judgment so as to permit the plaintiff to recover, in addition to the amounts already allowed, the sum of $1164.02 expended for burial purposes. Plaintiff to recover his costs on appeal.