[Civ. No. 19995.   Second Dist., Div. Two.   Aug. 17, 1954.]

MARY HELEN IRVIN, Respondent, v. ARTHUR JAMES PADELFORD, Appellant.

[Civ. No. 19941.   Second Dist., Div. Two.   Aug. 17, 1954.]

MARY HELEN IRVIN, Respondent, v. CITY OF POMONA, Appellant.

*Assigned by Chairman of Judicial Council.

Early, Maslach, Foran & Tyler, John Francis Foran and Donald J. Pierr for Appellant Padelford.

Hulen C. Callaway and Arlo E. Rickett, Jr., for Appellant City of Pomona.

Victor C. Rose, Alfred M. Klein and Robert P. Dockeray for Respondent.

McCOMB, J.—Plaintiff Irvin filed two actions, one against Arthur James Padelford, and the other against the city of Pomona, to recover damages for injuries resulting from an automobile accident. The cases were consolidated for trial before a jury and resulted in a judgment in favor of plaintiff in the amount of $20,000 against both defendants. Each of the defendants appeals from the judgment.

*Facts*:† On October 12, 1949, Second Street and Park Avenue were intersecting streets, each approximately 48 feet wide, in the city of Pomona. Park Avenue runs in a northerly and southerly direction and Second Street runs easterly and westerly. Second Street was an arterial highway. However, on October 12, 1949, at the time of the accident involved in this appeal, the stop sign and street light pole to which it was attached had been taken down by the city employees

---

†The evidence is viewed in the light most favorable to plaintiff (respondent) pursuant to the rules set forth in *Estate of Isenberg,* 63 Cal. App.2d 214, 216 [2] [146 P.2d 424].

for the purpose of repairing the wiring. The pole and sign had been down for two days prior to the accident and were not replaced until the afternoon of October 12, long after the accident had occurred.

On the morning of October 12, plaintiff was driving her automobile east on Second Street. She was on her way to work and was due there at 6 a. m. At the same time defendant Padelford was driving his automobile, to which was attached an 8-foot long trailer, north on Park Avenue. Due to the presence of a large building on the southwest corner, the intersection was "blind" for both drivers, neither being able to see 100 feet down the intersecting street during the last 100 feet of his or her approach.

When plaintiff arrived at the intersection the sun was up, visibility was good, and the street was dry. The brakes and tires on plaintiff's automobile were in good condition. She was driving at a speed of between 20 and 25 miles per hour. When the front of her automobile reached the west edge of Park Avenue and she entered the intersection, she first saw the northbound car driven by defendant Padelford one and a half to two car lengths south of the south edge of Second Street, moving at a speed which she estimated to be faster than she was traveling.

Thereafter the automobiles collided, resulting in injury to plaintiff, for whom judgment was rendered.

### Appeal of Defendant Padelford

Defendant Padelford contends that the judgment should be reversed as to him for these reasons:

(1) *There is no substantial evidence of negligence on his part.*

This contention is devoid of merit. ▮ Where an automobile has actually entered an intersection before another approaches, the driver of the first automobile has the right to assume that he will be given the right of way and be permitted to pass through the intersection without danger of collision, and to assume that the driver of the other automobile will obey the law, slow down and yield the right of way in order to prevent a collision. (*Couchman* v. *Snelling*, 111 Cal.App. 192, 195 [3] [295 P. 845]; *Ebert* v. *Tide Water Associated Oil Co.*, 54 Cal.App.2d 497, 501 [2] [129 P.2d 135].)

In the instant case the jury impliedly found, supported by substantial evidence, that plaintiff's car entered the inter-

section first and that thereafter defendant Padelford's car entered the intersection, which act was the proximate cause of the accident. It is obvious that thus there was substantial evidence to support the judgment against such defendant.

(2) *The trial court erred in refusing to grant defendant Padelford's motion for a new trial because of the failure of a material witness to appear at the trial.*

This proposition is not sound. ▇ The testimony of Charles Robert Edmonds, defendant's witness who did not appear at the trial, was merely cumulative of evidence received during the trial. Hence the denial of a motion for a new trial on the ground of newly discovered evidence will not be disturbed on appeal. (*Wilson* v. *Kopp,* 114 Cal.App.2d 198, 206 [1] [250 P.2d 166].)

(3) *The trial court erred in refusing to grant a new trial on the ground of irregularity of proceedings of the jury.*

This proposition is likewise untenable. Defendant Padelford urges that a new trial should have been granted because one of the members of the jury, Mrs. McManus, failed to answer in the affirmative on *voir dire* examination when asked if any member of her immediate family had been involved in any accidents that resulted in personal injuries.

It appears from the affidavit of one of defendant's attorneys that Mrs. McManus stated after the trial that her daughter had on one occasion fallen out of an automobile, and that she did not believe that plaintiff was necessarily driving at a high rate of speed in causing one of the occupants of defendant Padelford's car to be thrown from it.

▇ The verdict of the jury may not be impeached by the affidavit of one of the jurors except where the affidavit shows that the verdict was reached by a resort to the determination of chance within the meaning of subdivision 2, section 657 of the Code of Civil Procedure. (*George* v. *City of Los Angeles,* 51 Cal.App.2d 311, 320 [10] [124 P.2d 872].)

Therefore in the instant case in the absence of Mrs. McManus' testimony, which was not admissible in evidence, there was no testimony before the trial court to support defendant's claim.

There was another reason the trial court properly denied the motion for a new trial. There was no showing of prejudice resulting to defendant Padelford from Mrs. McManus' answer on her *voir dire* examination. ▇ This is a prerequisite to the granting of a new trial predicated upon the alleged

misconduct of a juror. (*George* v. *City of Los Angeles, supra,* 321 [12].)

In the present case it appears that the jury was polled after the verdict in favor of plaintiff and the poll showed ten "yes" and two "no" votes. It is therefore evident that since only nine "yes" votes were necessary to secure a verdict for plaintiff, even though Mrs. McManus had voted the other way the verdict would still have been for plaintiff. Hence no prejudice resulted from any irregularity arising out of her *voir dire* examination.

### APPEAL OF DEFENDANT CITY OF POMONA

Defendant city of Pomona urges the following propositions:

(1) *There was not sufficient evidence to prove a dangerous or defective condition of property of defendant city which was the proximate cause of the accident.*

This proposition is not tenable. Defendant city argues that the lack of the stop signal was not a proximate cause of the accident and that there was no dangerous or defective condition of the city property.

A defective or dangerous condition can be created by the use or general plan of operation of government-operated property as well as by a structural defect. In *Bauman* v. *San Francisco,* 42 Cal.App.2d 144, 153 [108 P.2d 989], the court said:

"It has frequently been stated that no hard-and-fast rule can be laid down as to what constitutes a dangerous or defective condition, but that each case must depend on its own state of facts. (Citing cases.) . . . It is also well settled that as a general rule it is a question of fact for the jury to determine whether a given set of facts or circumstances creates a dangerous or defective condition. (Citing cases.) . . .

"Applying these rules to the facts of the instant case, it is clear that this court cannot hold as a matter of law that the implied finding that the playground was dangerous or defective does not find substantial support in the record."

It was held in such case that the jury was justified in finding negligence for the following reasons: (a) the city was negligent in permitting the playing in sandboxes which were in dangerous proximity to a place where hardball was being played; (b) there was a failure to erect some barrier between the children playing in the sandboxes, and the playing of hardball; (c) there was a failure to properly supervise the playground by preventing the playing of hardball games in

dangerously close proximity to the sandboxes where the small children played.

It was thereafter stated at page 153: "There can be no doubt that a dangerous or defective condition can be created by the use or general plan of operation of government operated property, as well as by a structural defect. (*Huff* v. *Compton City Grammar School Dist.*, 92 Cal.App. 44 [267 P. 918].) The very fact that plaintiff was injured while playing in the sandbox, and while using the playground in the usual and ordinary way, is some evidence that a dangerous and defective condition existed. (*Hook* v. *City of Sacramento*, 118 Cal.App. 547 [5 P.2d 643]; *Adams* v. *Southern Pac. Co.*, 4 Cal.2d 731 [53 P.2d 121].)"

To the same effect are *Harper* v. *Vallejo Housing Authority*, 104 Cal.App.2d 621 [232 P.2d 262]; *Huff* v. *City of Compton Grammar School Dist.*, 92 Cal.App. 44 [267 P. 918], and *Wexler* v. *City of Los Angeles*, 110 Cal.App.2d 740 [243 P.2d 868].

The jury impliedly found that plaintiff was not contributorily negligent. Also, the jury were justified in their implied finding that a proximate cause of the accident was the failure of defendant city to maintain a stop sign at the intersection. This, of course, was a question of fact for the jury to determine from the evidence. (*Bauman* v. *San Francisco, supra*, 154 [4].)

It is likewise established that merely because another was negligent such negligence does not relieve the city from liability if its negligence is a proximate and concurring cause of the injury. (*Bauman* v. *San Francisco, supra*, 155.)

The facts in the instant case are analogous to those in *Lyle* v. *Fiorita*, 187 Wash. 537 [60 P.2d 709], where at page 713 the court says:

"The constant purpose of laws and rules regulating the use of roads is to prevent accidents and to expedite traffic, insofar as speed is consistent with safety. Manifestly, the mere designation of a road as an arterial highway, as such action is placed of record in a state or county office, is not notice in fact to the traveling public. Warning signs have of recent years become very numerous, and are properly and necessarily relied upon to give notice of physical facts which a driver should know. In the case of *Barber* v. *Seattle*, 182 Wash. 672 [48 P.2d 234, 236], we said: 'Even though the City might have been under no duty to install a wigwag system, it having installed it and taught the public to rely upon it, the failure

to operate it in a particular instance would create a trap and constitute negligence.' " (See also *Phinney* v. *City of Seattle,* 34 Wn.2d 330 [208 P.2d 879].)

*Campbell* v. *City of Santa Monica,* 51 Cal.App.2d 626 [125 P.2d 561], relied on by defendant city, is not applicable to the facts in the instant case. In that case plaintiff was a pedestrian upon a promenade or sidewalk created for pedestrians which could be used by automobiles specially licensed to go on the same. There were no signs posted prohibiting automobiles from using the promenade, or warning signs that automobiles might use the walk or promenade. The city authorized the chief of police to license special cars to travel on the promenade. Otherwise traffic was barred. In that case defendant without license went on the promenade and injured the minor plaintiff. Plaintiff predicated liability against the city in permitting vehicular traffic on the promenade, in the defendant's not erecting signs or barriers to prevent automobiles from using the promenade and in not erecting signs to warn pedestrians of the presence of vehicular traffic on the promenade.

It was held (1) that the city was entitled to assume that there would be a lawful use of the promenade and only by licensed cars, and (2) failure to enforce a law against misuse imposed no liability in the absence of statute. In the Campbell case it was shown that the city of Santa Monica posted a detour sign that the motorist negligently disregarded, and therefore the city did all it could do to properly warn off the motorists. Secondly, it was held that the promenade was not made dangerous by reason of the absence of warning signs (the absence of signs did not create a trap), but only by the negligent operation of a motor vehicle which had no invitation to enter thereon.

In the present case the city of Pomona by virtue of its ordinance in creating Second Street a through highway had a mandatory duty placed upon it to maintain stop signs and, upon their removal temporarily, to maintain emergency signs for the safety of the traveling public. Second, a trap was actually created by the city of Pomona in the instant case whereas in the Campbell case no such trap existed.

In the case at bar defendant city had by ordinance made Second Street a through highway. Section 82.5 of the Vehicle Code defines a through highway as a highway at the entrance to which vehicular traffic is required by law to stop before entering or crossing the same, when stop signs are erected

as provided in the code. Section 471 of the code provides that every stop sign shall be located at or near the entrance to the highway or intersection where a stop is required.

Having declared Second Street to be a through highway defendant city was under an obligation to comply with the Motor Vehicle Code by providing stop signs or other appropriate signals at each intersection with Second Street. By temporarily removing these stop signs the city created a dangerous condition in that persons using Second Street would, and had right to assume, it was a through street and would proceed on the theory that automobiles approaching on intersecting streets would obey the law and come to a complete stop before entering the intersection with Second Street. It follows naturally that the removal of the stop sign on Park Avenue was the proximate cause of Mr. Padelford's entering the intersection without first coming to a complete stop. ▉ It is presumed that a person will comply with the law. ▉ Had the stop sign been in its proper position defendant Padelford would have obeyed the law, made a complete stop and thereby prevented the accident.

The evidence and the inferences which the jury were justified in drawing therefrom fully support the implied finding of the jury that defendant city's act was a proximate cause of the accident.

(2) *The trial court erred in instructing the jury as follows*:

"In considering the questions whether or not the condition of the intersection at West Second Street and Park Avenue in the city of Pomona as here involved was dangerous and whether there was any negligence on the part of the defendant in allowing that condition to exist, you should consider the use to which the said intersection and the stop signs were intended to be put and the use of which, before the accident, they actually were put by the public, with the knowledge, if any of the board, officer or person that was authorized to remedy any dangerous or defective condition, and the use to which they were being put by the plaintiff at the time of the accident.

"A condition that may not be dangerous under some circumstances of use may become so when the premises or equipment are put to a different use, and although the property may be free from structural defects, and may be safe for certain uses, it may take on danger under the circumstances of a particular kind of use, and when that use and danger be-

comes known to the governing person or board, his or their duty with respect to such a situation is the same as it would be if the danger arose not merely from some particular use but from a structural defect or other hazardous condition, as that duty has been stated to you in my instructions.

"If you should find that the plaintiff Mary Irvin was led to believe by the City of Pomona, a municipal corporation, that when she was proceeding on West 2nd Street she was on an arterial highway, then in determining whether she was exercising ordinary care in the manner in which she operated her vehicle and in the observations that she made, her said conduct must be judged in the light of the conduct to be expected from an ordinarily prudent operator of a motor vehicle under the same or similar circumstances, and having the same knowledge and belief that the plaintiff Mary Irvin had at that time in providing that such was the belief or understanding that might have been expected of an ordinarily prudent person under the same or similar circumstances.

"There is one more, however, which through secretarial error should have been included and which deals with the matter to which I have already made reference, dealing with the performance of duty and giving notice, and in that regard I wish to instruct you further that when a condition which is inherently dangerous or defective has been created through the carrying out of a plan adopted and authorized by the governing body of a city, no further proof than proof of that fact is needed to charge the city with notice of that condition."

This proposition is also devoid of merit. Objections to the foregoing instruction may be summarized in the following statement from defendant city's opening brief:

"This instruction falls in the same category of error in that it tells the jury that the law governing the conduct of Mary Irvin under the circumstances here involved was that if she believed that she was on an arterial highway and that stop signs were erected at all intersecting streets that she had a right to rely on this belief and her previous habits and not on actual observations."

If defendant city's argument is sound that a driver operating a vehicle on an arterial highway is bound to travel in the same manner as he would if driving through a series of uncontrolled intersections, then the whole purpose for having arterial highways is nullified. The purpose of naming certain streets as "through streets" is to expedite the move-

ment of traffic on those streets and to protect the driver from traffic from cross streets. ▉ Knowing he is on a "through street" the driver is not only entitled to rely on the traffic on cross streets obeying the law and coming to a full stop, but he is also entitled to rely on the controlling governmental agency also obeying the law and properly marking the intersecting streets.

It was a question of fact for the jury as to whether or not plaintiff was guilty of contributory negligence with respect to the city and the jury found against the city on that question. ▉ The driver on an arterial highway has the right to assume that other drivers will obey the law and yield him the right of way. ▉ Where, as in the instant case, the city fails to mark one of the intersections properly, a trap is laid for the driver on the arterial highway because of the very fact that he is entitled to rely on being given the right of way.

In *Lyle* v. *Fiorito*, 187 Wash. 537 [60 P.2d 709], at page 713 [60 P.2d], the court said: "Respondent Lyle was proceeding along an arterial highway, and was justified in assuming (until he knew, or should have known, the contrary) that other drivers would accord him the right of way to which he was entitled. *Church* v. *Shaffer*, 162 Wash. 126 [297 P. 1097]; *Mathias* v. *Eichelberger*, 182 Wash. 185 [45 P.2d 619]."

Again in *Jobe* v. *Harold Livestock Com. Co.*, 113 Cal.App.2d 269, at 274 [247 P.2d 951], the court comments: ". . . Defendant was on a highway protected by boulevard stops signs. He had a right to assume, initially, that vehicles upon intersecting streets would not be driven onto Clark Street in the way of vehicles on the latter street which were so close as to constitute an immediate hazard. (Veh. Code, § 552(a).) This was merely a circumstance which tended to excuse him from exercising the vigilance that would be expected of him if he had not been on a through highway, and to explain his failure to see the autoette as it entered the highway."

In *McSweeney* v. *East Bay Transit Co.*, 60 Cal.App.2d 807, 812 [141 P.2d 787], the court says: "The record discloses that Mr. McSweeney was driving as he approached the intersection 'between 25 and 30 miles per hour.' That speed, defendants contend, was in excess of the statutory limit. (§ 511.) But such excess was not negligence as a matter of law. (§ 513.) . . . The accident occurred at about 7 a. m. Unless Mr. McSweeney was negligent he was entitled to assume

at said time and place that no one would violate the law and that any vehicle approaching the boulevard from the south would stop before 'entering the nearest crosswalk.' (§ 577.) As the record stands we assume the jury found he did indulge in such assumption and proceeded accordingly.''

Clearly in view of the foregoing authorities, the trial court did not err in giving the instructions questioned by defendant city.

(3) *The trial court erred in instructing the jury as follows*:

''(b) Local authorities in their respective jurisdictions shall place and maintain or cause to be placed and maintained such traffic signs and, subject to the provisions of Section 466, such stop signs, semaphores and control devices upon streets and highways as may be necessary to indicate and to carry out the provisions of this code or local traffic ordinances or to regulate, warn or guide traffic.

''(c) All signs and signals erected in accordance with the provisions of this code shall be deemed official traffic signs and signals.''

The foregoing instruction was properly read to the jury. The quoted section places upon the local authorities the duty to maintain the necessary traffic signs to carry out the provisions of the code and/or local traffic ordinances. Since the city had by ordinance made Second Street a through highway, it was incumbent upon it to erect and maintain a ''stop'' sign at Park Avenue.

The instruction was pertinent and proper.

The judgments are affirmed.

Moore, P. J., and Fox, J., concurred.