[No. C027893. Third Dist. Mar. 31, 1998.]

CITY OF SOUTH LAKE TAHOE, Petitioner, v.
THE SUPERIOR COURT OF EL DORADO COUNTY, Respondent;
DAVID MARKHAM et al., Real Parties in Interest.

**COUNSEL**

Rollston, Henderson, Rasmussen & Crabb· and Robert M. Henderson for Petitioner.

No appearance for Respondent.

Nordstrom, Steele, Nicolette and Jefferson, Patrick DeBlase and Thomas D. Kolpacoff for Real Parties in Interest.

**OPINION**

**PUGLIA, P. J.**—Petitioner (defendant) City of South Lake Tahoe seeks a writ of mandate directing respondent superior court to grant its motion for summary judgment in the underlying action. We shall grant the requested relief.

The underlying action arises out of a two-car accident which occurred at the intersection of Eloise Street and Third Street in the City of South Lake Tahoe on May 6, 1994. Real parties in interest (plaintiffs) David Markham, the driver, and his son Michael were in one vehicle; plaintiffs Deanna Huff, the second driver, and passenger Nicole Lane were the occupants of the other car. At approximately 5:45 p.m. plaintiff David Markham was driving north on Third. His car was struck broadside by the car driven by plaintiff Huff, who was proceeding west on Eloise Street. There are no stop signs for traffic on Third Street at its intersection with Eloise Street. There are usually stop signs for eastbound and westbound traffic on Eloise Street at its intersection with Third Street.

However, the situation was not as usual when the Markham and Huff vehicles collided. Earlier on the same day, about 1:30 p.m., there had been another accident at the same intersection. One consequence of that event was that the stop sign which controlled westbound traffic on Eloise Street had been knocked down and had not been replaced when the Markham-Huff collision occurred. Plaintiff David Markham was familiar with the intersection, having driven through it many times before the accident, including five or six times on that day. Markham relied on traffic westbound on Eloise stopping in compliance with the sign. Plaintiff Huff, the driver of the other vehicle, was from Santa Cruz and had never driven through the intersection before.

The accident occurred during daylight hours, the weather was cloudy, and while the road surface was wet from rain or snow earlier that day, there is no evidence that the damp surface was a factor in the accident. Markham estimated that his speed at the moment of impact was about 25 m.p.h. According to a police report prepared at the scene, Huff told the investigating officer that she was moving about 25 to 30 m.p.h. as she approached the intersection. However, at her deposition she estimated her speed at 20 to 25 m.p.h. immediately before the collision. In addition, in her declaration in opposition to the motion for summary judgment, Huff stated she did not see the intersection and was unaware of its existence until the moment of the collision, nor did she see the limit line painted on the pavement for westbound traffic. While Huff's declaration attributes this lack of awareness to the "nature of the roadway and the apparent obstructions," she does not explain what the problematic nature of the roadway was, nor does she describe the "obstructions" referred to.

Two complaints were filed in superior court, one each by the respective occupants of the two vehicles, seeking damages from each other and from defendant. As to the claims against defendant, plaintiffs alleged that the absence of a stop sign for traffic westbound on Eloise created a dangerous condition of public property within the meaning of Government Code section 830, subdivision (a), for which defendant was liable under Government Code section 835. (Further statutory references to sections of an undesignated code are to the Government Code.) The superior court consolidated the two actions, and defendant subsequently moved for summary judgment. Relying primarily on section 830.4, defendant argued that the intersection of Third Street and Eloise Street did not, as a matter of law, constitute a dangerous condition of property, because the statute precludes liability for a dangerous condition premised on the absence of a stop sign.

The superior court found that section 830.4 did not immunize defendant, and that there is a triable issue of fact as to whether the failure to replace the

stop sign gave rise to a dangerous condition. We conclude the court erred in denying defendant's motion for summary judgment and shall order a writ of mandate to issue as requested by defendant in its petition to this court.

■ The general principles which govern our review of the trial court's ruling on a summary judgment motion are familiar. " 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. . . . To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial.' (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46], citations omitted.) [¶] The pleadings identify the issues to be considered on a motion for summary judgment. (*Sadlier* v. *Superior Court* (1986) 184 Cal.App.3d 1050, 1055 [229 Cal.Rptr. 374].) The defendant must present facts to negate [an essential element of] each claim as framed by the complaint or to establish a defense. Only then must the plaintiff demonstrate the existence of a triable, material issue of fact. . . ." (*Wattenbarger* v. *Cincinnati Reds, Inc.* (1994) 28 Cal.App.4th 746, 750 [33 Cal.Rptr.2d 732].) Since the decision to grant or deny a motion for summary judgment raises only questions of law, we review de novo the trial court's order. (*Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589, 595 [250 Cal.Rptr. 299].)

■ Defendant contends that provisions of the California Tort Claims Act (§ 810 et seq.) operate together to provide it with an absolute defense to plaintiffs' claims. The starting point of defendant's argument is section 815, which states the general principle that public entities are not liable for injuries except as provided by statute, and that even such limited liability is subject to any statutory immunities. Plaintiffs' complaints, as noted above, allege that the intersection where the accident occurred falls within the scope of section 835, which permits imposition of liability on a public entity for "injury caused by a dangerous condition of its property. . . ." (§ 835.) In arguing that it is entitled to summary judgment, defendant reasons that since the "dangerous condition" upon which plaintiffs rely is the failure to replace the stop sign for westbound traffic on Eloise, the provisions of section 830.4 bestow a complete defense. The latter statute reads in full: "A condition is not dangerous within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code . . . ."

Before discussing plaintiffs' counterarguments, we address the separate immunity provisions of section 830.8, which the parties incorporated into

their arguments in the trial court and before us. That section states: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (*other than one described in Section 830.4*) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." (*Ibid.*, italics added.) By its terms, section 830.8 permits imposition of liability on public entities in circumstances where the failure to post warnings, in the form of signs or signals, of a dangerous condition creates a "trap" for the unwary motorist. (See *Washington* v. *City and County of San Francisco* (1990) 219 Cal.App.3d 1531, 1536 [269 Cal.Rptr. 58].) However, the parenthetical clause in section 830.8 makes it clear that its provisions come into play only when it is alleged that some type of sign, device or marking other than those listed in section 830.4 should have been provided. (219 Cal.App.3d at p. 1536, and see *Chowdhury* v. *City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1197 [45 Cal.Rptr.2d 657].) Section 830.4, of course, includes stop signs in its designated traffic controls. In this case, plaintiffs have never argued that some type of regulatory or warning sign or device other than a stop sign should have been in place at the site of the accident. It therefore follows that section 830.8 is simply not pertinent to the present action, and we shall not engage in further discussion of its provisions.

Turning again to section 830.4, we note that it extends immunity only for the "mere" failure to provide a stop sign, i.e., where that is the only basis for fixing liability, and that where there are additional factors giving rise to a dangerous condition, absence of a stop sign or signal may be considered. (Cf. *Washington* v. *City and County of San Francisco, supra*, 219 Cal.App.3d at pp. 1536-1539.) In an attempt to avoid summary judgment, plaintiffs have cited several cases which, they contend, support their argument that because of additional factors attending this accident, section 830.4 does not provide a complete defense. However, the authorities upon which plaintiffs rely are distinguishable in material specifics from the present circumstances, and plaintiffs have not presented evidence of any characteristic, apart from the absence of a stop sign, which would give rise to a triable issue regarding the existence of a dangerous condition at the intersection of Third and Eloise.

Plaintiffs point to a line of cases involving obscured stop signs in which the courts rejected a governmental defendant's claims of immunity. For instance, in *Bakity* v. *County of Riverside* (1970) 12 Cal.App.3d 24 [90

Cal.Rptr. 541], the court held that while the defendant public entity could not be liable for failure to install a stop sign, the immunity provided by section 830.4 was not available where a stop sign was in fact installed at an intersection where trees obstructed the view of approaching vehicles, but the sign was located at a point so far from the place where a stop was required that it was deceptive. (12 Cal.App.3d at pp. 30-31.) That is obviously a different situation from the one presented here, where there was no sign at all nor any condition, such as trees obscuring the view, which made the intersection dangerous. Similarly, in *De La Rosa* v. *City of San Bernadino* (1971) 16 Cal.App.3d 739 [94 Cal.Rptr. 175], a stop sign the city installed was positioned in such a way that it was obscured from the view of approaching vehicles by trees and shrubbery. (*Id.* at pp. 745-746.) Both *Bakity* and *De La Rosa* demonstrate the principle that while a public entity has no obligation to provide stop signs, if it does so in a such a way that the sign itself creates or becomes a dangerous condition, liability may ensue. (See also *Dudum* v. *City of San Mateo* (1959) 167 Cal.App.2d 593, 596-597 [334 P.2d 968].) However, those cases have no application here, where the plaintiffs rest their claim of municipal liability on the complete absence of such a sign, rather than its deceptive location.

Of the cases relied upon by plaintiffs in their opposition papers, the one which involves facts most nearly analogous to the present matter is *Irvin* v. *Padelford* (1954) 127 Cal.App.2d 135 [273 P.2d 539]. In *Irvin*, a stop sign in the City of Pomona which was attached to a light pole was removed to repair the light. The sign controlled cross traffic entering onto a road which had been designated a through highway by the city pursuant to former Vehicle Code section 82.5. An accident occurred when a car traveling on the cross street failed to stop at the intersection and collided with a vehicle on the through highway, the driver of which was relying on the existence of stop signs for entering traffic. (127 Cal.App.2d at pp. 137-138.) The *Irvin* court held that the city, having by ordinance designated one of the streets a through highway, and thereby inducing such reliance, was statutorily required by former Vehicle Code section 82.5 to provide such signs and could be liable for failing to do so. (127 Cal.App.2d at pp. 142-143.)

While the similarity of the accident in *Irvin* to the occurrence in the instant case cannot be gainsaid, plaintiffs' reliance on that decision is nonetheless unavailing because of other material differences. First, there is no evidence that defendant has designated Third Street as a through highway, which would have triggered the obligation to provide a stop sign for traffic on Eloise. (Veh. Code, §§ 21101, 21354.) More significantly, section 830.4 was not extant at the time *Irvin* was decided, having been enacted as part of the California Tort Claims Act in 1963. (Stats. 1963, ch. 1681, § 1, p. 3272.)

These distinctions, i.e., absence of one of the critical facts underlying the *Irvin* court's reasoning, and the subsequent enactment of the statutory defense upon which defendant appropriately relies, deprive the earlier case of any persuasive force.

*Rose* v. *County of Orange* (1949) 94 Cal.App.2d 688 [211 P.2d 45], is not helpful to plaintiffs for similar reasons. In *Rose*, a stop sign at a "T" intersection where traffic entered into a state highway had been knocked down about a week before the accident. However, there was evidence of other factors which rendered the intersection arguably dangerous in addition to the "mere" absence of a stop sign, and, again, there was no statutory defense at that time of the type provided by section 830.4. (94 Cal.App.2d at pp. 690-691.)

The basic premise of defendant's summary judgment motion is that since it had no duty to provide a stop sign in the first place, and by virtue of section 830.4, it could not be held liable if no sign had ever existed at the corner of Third and Eloise, it cannot become liable if the sign is removed, whatever the reason for the removal may be. We find this logic persuasive. To conclude otherwise would require us to accept the proposition that once the stop sign on Eloise was in place it could never be removed with impunity, and that motorists, particularly those on Third Street, could forever after rely on its presence. This reasoning, which is implicit in plaintiffs' arguments, finds no support in statute or case law. While such a continuing duty on the part of a governmental entity might be arguable if Third Street at Eloise had been officially designated a through highway crossing or a "stop" intersection pursuant to Vehicle Code sections 21101 and 21354, there is no evidence that such designation had been made. Furthermore, even assuming arguendo defendant had designated Third Street a through highway, or Third and Eloise a stop intersection, we are unaware of any legal restriction which would prohibit defendant from rescinding either designation and removing the sign. Had that occurred here, we have no doubt section 830.4 would have barred plaintiffs' action regardless of whether either driver had been notified of the removal.

Thus at the time of the accident, westbound vehicles on Eloise were entering an uncontrolled intersection with Third Street, and drivers were subject to the rules of the road applicable at such a crossing. (Veh. Code, §§ 21800, 22352.) ■ Defendant "cannot be charged with foreseeing that a motorist will recklessly disobey traffic laws. . . ." (*Chowdhury* v. *City of Los Angeles, supra*, 38 Cal.App.4th at p. 1195.) "At some point, citizens must take responsibility for their conduct when there is an obvious roadway hazard. . . . The government cannot provide round-the-clock staffing to

respond to every eventuality, particularly when the need to take precautions is self-evident and the law is clear on how motorists must behave under the circumstances." (*Id.* at p. 1196.) ■■■ Nothing in the record indicates that defendant city had a duty to place a stop sign on Eloise at Third, or that, having done so, it was obligated to keep the sign in place indefinitely. Furthermore, as with the inoperative traffic signals in *Chowdhury*, it makes no difference whether the stop signs are removed ". . . by design or accident." (*Id.* at p. 1195.) Given this reasoning, any significance that may have attached to plaintiff David Markham's familiarity with the intersection and asserted reliance on a stop sign controlling traffic entering the intersection from Eloise Street is eliminated. There being no apparent reason why defendant could not have purposefully removed the stop sign at any time, it is irrelevant that the same result was accomplished by the earlier accident. While Markham's reliance on the continued presence of a stop sign may be relevant in determining the reasonableness of his driving, and may possibly effect the comparative negligence element of the cross-actions between him and the occupants of the other car, it cannot give rise to a cause of action against the municipal defendant where the Legislature, by enactment of section 830.4, has created a complete defense.

In an apparent effort to create a triable issue of fact as to the existence of a dangerous condition in addition to the mere absence of a stop sign or signal, plaintiff Huff, the driver of the vehicle travelling on Eloise street, submitted a declaration in which she avers that because of "obstructions" she was unable to see the approaching intersection. Defendant countered this showing by first pointing out that Huff, in her deposition, testified that nothing obstructed her view as she approached the intersection. Defendant also placed into evidence a series of photographs of the intersection viewed from various distances as it is approached westbound on Eloise, the direction Huff was travelling immediately before the accident. We have inspected those photographs, and agree with defendant that there is nothing unusual about the intersection, and that it is clearly visible to approaching traffic. "The existence of a dangerous condition is usually a question of fact, but may be resolved as a question of law if reasonable minds can come to but one conclusion." (*Chowdhury* v. *City of Los Angeles, supra,* 38 Cal.App.4th at p. 1194.) Having viewed the photographs of the intersection, we have no hesitancy in concluding as a matter of law that the crossing of Third and Eloise is obvious, that there is nothing which would prevent the observant motorist from becoming aware of it at a safe distance before the intersection is entered, and that no reasonable person could find that it constituted a dangerous condition.

Plaintiffs have submitted no evidence that the accident site was anything other than a common uncontrolled intersection, and their complaints against

defendant are based upon the "mere" failure to provide a stop sign. Section 830.4 provides a complete defense to such a claim, and defendant's motion for summary judgment should have been granted.

We have previously notified the parties that we were considering issuance of a peremptory writ of mandate in the first instance, and afforded respondent superior court and plaintiff an opportunity to submit opposition. Having complied with these procedural requirements, we are authorized to issue the peremptory writ forthwith. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying petitioner City of South Lake Tahoe's motion for summary judgment, and enter a new and different order granting that motion. Defendants shall recover their costs of this proceeding. Upon finality of this decision, the stay previously issued is dissolved.

Scotland, J., and Raye, J., concurred.