Filed 5/15/15  Yardley v. County of Imperial CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RAY ALAN YARDLEY, et al.<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>COUNTY OF IMPERIAL,<br><br>    Defendant and Respondent. | D064757<br><br><br>(Super. Ct. Nos. ECU04902,<br> ECU04959, ECU05024,<br> ECU05033) |

APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Affirmed in part and reversed in part.

Reed Smith, Margaret M. Grignon, Paul D. Fogel and Kasey J. Curtis; Law Offices of C. Ray Carlson, C. Ray Carlson and Jennifer B. Smith; Alder Law, C. Michael Alder, Stephen K. McElroy and Jennifer Burke, for Plaintiffs and Appellants.

The Viviano Law Firm and Charles A. Viviano, for Defendant and Respondent.

This case arises from an automobile accident in Imperial County (County) in which a semi tractor-trailer collided with a second vehicle carrying six people.  In the second vehicle, three people were killed and three sustained serious injuries.  The

survivors and the children of those killed in the second vehicle (collectively plaintiffs) brought actions against several defendants, including the County. Those actions were later consolidated. Plaintiffs alleged two causes of action against the County: (1) negligence; and (2) dangerous condition of public property (Gov. Code,[1] § 835).

On the eve of trial, the court sua sponte raised the issue whether plaintiffs had a viable legal basis for recovering against the County. This triggered a series of procedural moves, which resulted in the parties agreeing plaintiffs' counsel would make an offer of proof and the court would rule on the County's nonsuit motion. After the parties had the opportunity to brief the issues and plaintiffs' counsel made an offer of proof, the court granted the nonsuit motion on both causes of action, and entered judgment in the County's favor.

Plaintiffs appeal. We determine the court erred in granting the County's nonsuit motion on the dangerous condition cause of action (§ 835), but the court properly entered judgment in the County's favor on the negligence cause of action. We remand for further proceedings on the dangerous condition claim.

FACTS AND PROCEDURE

*Factual Summary*

Our factual summary is based solely on plaintiffs' offer of proof. For purposes of this opinion, we assume the truth of the stated facts and all reasonable inferences from

---

[1] All further unspecified statutory references are to the Government Code.

2

those facts.  (See *Cooper v. State Farm Mutual Automobile Ins. Co.* (2009) 177 Cal.App.4th 876, 891 (*Cooper*).)

The traffic collision occurred at the intersection of Shank Road (a County road) and Highway 115 (a state highway).  Shank Road runs east-west.  Highway 115 runs north-south.  Shank Road has a 55-miles-per-hour speed limit, and Highway 115 has a 65-miles-per-hour speed limit.

Shortly before the accident, three couples (plaintiffs or plaintiffs' parents) were in a vehicle traveling south on Highway 115 toward Shank Road.  At the same time, Cordell Perkins was traveling eastbound on Shank Road toward Highway 115.  The drivers of both vehicles were driving at or just below the speed limit.

There are no traffic controls for Highway 115 drivers at the Shank Road intersection.  Shank Road has a stop sign for eastbound drivers just before Highway 115.  However, within a day or two of the collision, this stop sign had fallen or otherwise become broken, and an unidentified person reattached the sign to a three- or four-foot post with bailing twine.  By the morning of the accident, the face of the stop sign had turned so it was facing southbound motorists on Highway 115, rather than eastbound motorists on Shank Road.  The stop sign thus made it appear to eastbound motorists on Shank Road that they had the right of way and did not need to stop.

About one hour before the collision, at about 6:40 a.m., Imperial County Deputy Sheriff Moises Badena was on duty in his patrol vehicle and discovered the damaged and misdirected stop sign.  While seated in his vehicle, he radioed his dispatcher about the problem, and then left the scene without taking any action to warn drivers on the two

3

roads.  Badena had flares and other warning and safety equipment in his vehicle, but after reporting the problem, he did not deploy this equipment and instead returned to the station, completed paperwork, and went off duty.

At 6:48 a.m., the sheriff's dispatcher called the California Highway Patrol (CHP) to inform the agency about the misdirected stop sign.  The CHP assigned CHP Officer Robert Gonzalez to travel to and secure the intersection.  Officer Gonzalez left the CHP station shortly after.  At 7:15 a.m. the sign maintenance unit was called.

About 20 minutes later—before Officer Gonzalez or the sign maintenance employee reached the scene—Perkins (who was unfamiliar with the area) was driving his truck on Shank Road eastbound approaching Highway 115.  He briefly noticed the stop sign on the side of the road, but saw that it faced toward southbound drivers and made a "split second" decision that it applied to Highway 115 motorists.  By the time he saw the limit line on the pavement, he was unable to stop.  His truck entered the intersection and crashed into plaintiffs' vehicle.  The driver, Roger Cox, and two others in the front seat of the vehicle (Cox's wife, Arda Cox, and Ray Yardley) were seriously injured.  The three passengers sitting in the back seat (Ray's wife, April Yardley, and another couple, Colleen and Randall Bradshaw) were killed.

CHP officer Gonzalez received a radio call about the collision while he was driving to secure the intersection.  About 10 minutes after the accident, Caltrans road maintenance workers arrived and repaired the sign.  Officer Gonzalez concluded that if he had seen the defective stop sign earlier, he would have stayed on the scene with his emergency lights activated until it had been repaired.

4

On the day of the accident, Deputy Badena's responsibilities included patrolling a designated area of the County, preventing traffic accidents and providing assistance to the motoring public. He had received the standard Peace Officer Standards and Training (POST) required of all California peace officers. The POST guidelines provide that when a peace officer encounters a damaged or malfunctioning sign (like the one at issue here) the officer should assess the hazard and deploy " 'appropriate warning devices, such as patrol vehicle emergency lights, flare patterns, cones, portable stop signs . . . .' " The initial responding officer " 'must assume preliminary incident command and take the necessary steps towards establishing control of the situation. It becomes the officer's responsibility . . . to initiate appropriate notifications, isolate the hazard, control ingress, egress to the area, continually gather and communicate further information, implement a plan of action and reassess . . . and evaluate the effectiveness of the operation and make modifications as necessary.' "

Deputy Badena violated these guidelines. Although his patrol car was equipped with emergency flashing lights, emergency flares, and orange safety cones, he did not remain at the scene or deploy this equipment. Instead, he radioed the sheriff's dispatcher about the misdirected stop sign and then left. Plaintiffs' expert on police conduct and training would testify that a law enforcement officer under these circumstances should and could have taken steps to secure the intersection to make it safe until the sign could be repaired.

The County owns Shank Road and the State of California (State) owns Highway 115. Generally, the State owns an intersection if it owns at least one of the intersecting

5

streets. The State owns the defective stop sign, and was responsible for maintaining it. However, the stop sign was located on property owned by the County, and therefore the State was required to obtain the County's permission and consent to place the sign on the property.

*Procedural Background*

Plaintiffs' amended consolidated complaints against the County alleged two causes of action: (1) dangerous condition of public property (§ 835); and (2) negligence based on a vicarious liability theory.[2] Although the County did not file any dispositive pretrial motions, in ruling on the in limine motions, the court sua sponte questioned whether the County owed plaintiffs a duty under the alleged factual circumstances and/or whether the facts supported plaintiffs' claim that the County was liable for a dangerous condition based on Deputy Badena's knowledge of the defective sign.

The court and parties then engaged in a series of procedural steps, leading to an agreement that plaintiffs would provide an offer of proof, and the County would move for a nonsuit.[3] On the day scheduled for the offer of proof, the court orally raised additional issues based on its own independent research, including whether the County could be

---

[2]     Plaintiffs also initially named the State as a party but later dismissed the State after the State moved for summary judgment on grounds it had not received notice in sufficient time to have taken preventive measures. Plaintiffs earlier settled with Perkins at his insurance limits.

[3]     We do not detail these procedural steps here because they are not relevant to the issues raised on appeal.

held liable if the facts showed the State owned and maintained the stop sign and the accident occurred at the State-controlled intersection.

Immediately following this discussion, plaintiffs' counsel presented an offer of proof based on the facts summarized above. After considering these facts and allowing the parties to brief the issues, the court granted a nonsuit on both of plaintiffs' claims (negligence and section 835 dangerous condition) and entered judgment in the County's favor. The court identified numerous grounds for its ruling, but we need not detail those grounds here. Under the applicable de novo standard, we review the court's conclusion, and not its reasoning or rationale. (See *County of Orange v. Association of Orange County Deputy Sheriffs* (2011) 192 Cal.App.4th 21, 32.)

## DISCUSSION

### I. *Nonsuit Review Standards*

"A defendant is entitled to nonsuit if the trial court determines as a matter of law that the plaintiff's evidence, when viewed most favorably to the plaintiff under the substantial evidence test, is insufficient to permit a jury to find in his favor." (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 713.) Where, as here, the nonsuit was based on counsel's statement, we must assume plaintiffs can prove all the stated facts. (See *Cooper, supra*, 177 Cal.App.4th at p. 891.)

A nonsuit after the opening statement or an offer of proof is not favored and is rarely granted. (*Cooper, supra*, 177 Cal.App.4th at pp. 891-892; *Galanek v. Wismar* (1999) 68 Cal.App.4th 1417, 1424; *John Norton Farms, Inc. v. Todagco* (1981) 124 Cal.App.3d 149, 171-172.) A nonsuit is warranted only if it is clear there will be no

7

evidence to support a judgment in the plaintiff's favor. (*Willis v. Gordon* (1978) 20 Cal.3d 629, 633; *Ewing v. Northridge Hospital Medical Center* (2004) 120 Cal.App.4th 1289, 1296.) Affirmative defenses generally do not support a nonsuit because a plaintiff does not have the burden to negate the applicability of an affirmative defense. (See *Inderbitzen v. Lane Hospital* (1932) 124 Cal.App. 462, 465-466.) However, a nonsuit motion may be granted if the opening statement contains " 'uncontrovertible proof' " of the applicability of the affirmative defense. (*Galanek, supra*, 68 Cal.App.4th at p. 1424; *Abeyta v. Superior Court* (1993) 17 Cal.App.4th 1037, 1041.) We review a nonsuit de novo. (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1541-1542.)

Applying these standards, we examine plaintiffs' contention the court erred in granting nonsuit on each of their causes of action: (1) dangerous condition of government property under section 835; and (2) negligence based on a vicarious liability theory.

## II. *Dangerous Condition Cause of Action*

### A. *Applicable Legal Principles*

A governmental entity is not liable for an injury unless liability is specifically permitted by a statute. (§ 815; see *State ex rel. Dept. of California Highway Patrol v. Superior Court* (2015) 60 Cal.4th 1002, 1009.) Section 835 states that a public entity may be held liable for a dangerous condition of public property under certain circumstances. (See *Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1126 (*Metcalf*); *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 68.) Section 835 provides:

8

"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

(a)  A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

(b)  The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to *protect against* the dangerous condition."  (Italics added.)

"Dangerous condition" means "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  (§ 830, subd. (a).)  Section 830.4 excludes from the "dangerous condition" definition a condition resulting "merely" from the "failure to provide" certain "regulatory" traffic control devices or signs.  (§ 830.4.)  " 'Protect against' includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, *or warning of a dangerous condition*."  (§ 830, subd. (b), italics added.)  " 'Property of a public entity' and 'public property' mean real or personal property owned or controlled by the public entity, but do not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity."  (§ 830, subd. (c).)

9

A section 835 cause of action is subject to a reasonableness defense. "A public entity is not liable . . . for injury caused by a dangerous condition of its property if the public entity establishes that the action it took to protect against the risk of injury . . . or its failure to take such action was reasonable." (§ 835.4, subd. (b); see *Biron v. City of Redding* (2014) 225 Cal.App.4th 1264, 1281.) Reasonableness is a question of fact, and requires the factfinder to consider the "time and opportunity" the public entity had to take action and to weigh the probability and gravity of potential injury against the "practicability and cost of protecting against the risk of such injury." (§ 835.4, subd. (b); see *Metcalf, supra*, 42 Cal.4th at p. 1137; *Biron, supra*, 225 Cal.App.4th at pp. 1281-1282.)

B. *Analysis*

In his offer of proof, plaintiffs' counsel described facts showing that at the time of the collision: (1) the stop sign was misdirected and appeared to face southbound Highway 115 traffic instead of eastbound Shank Road traffic; (2) this condition made it reasonably foreseeable a driver on Shank Road would misperceive the need to stop and that an accident would occur in the Highway 115/Shank Road intersection; (3) Deputy Badena was aware of the problem about 55 minutes before the accident and notified his dispatcher of the need to repair the condition; (4) Deputy Badena violated applicable guidelines and training standards by leaving the scene and/or by failing to provide warning equipment (that he had available to him) before he left the scene; and (5) the misdirected sign, along with the absence of warning signals, made Shank Road a

10

dangerous public street and was a substantial factor in causing the automobile collision and plaintiffs' injuries.

As they did below, plaintiffs argue that this offer of proof established the basis for a section 835 claim. They say that the County's property (Shank Road)—with a misdirected sign—was in a dangerous condition that created a substantial risk of injury to drivers on Shank Road *and* on Highway 115. They argue that the County had actual notice of the dangerous condition through Deputy Badena's observations and telephone call to dispatch, and Deputy Badena had (as plaintiffs' experts would testify) adequate time to prevent injuries by remaining at the scene or providing warning equipment at the scene. Additionally, they argue that this claim is not barred by the sign immunity statute (§ 830.4) because the claim does not arise from the mere "failure to provide" a traffic control sign, and instead concerns the County's failure to warn about a damaged and defective sign that misled drivers.

The County counters that even assuming the facts stated in plaintiffs' offer of proof are true, they do not support a viable claim because (1) the *State* owned and controlled the defective stop sign and/or plaintiffs were traveling on *State-owned* Highway 115 at the time of the accident; (2) the County did not have sufficient notice of, and an opportunity to repair, the dangerous condition within the meaning of section 835, subdivision (b); and (3) the County was immune from liability under section 830.4 (sign immunity), section 820.2 (discretionary act immunity), and section 845 (police protection immunity).

We address each of these arguments below.

11

## 1. *State Ownership of Stop Sign and Highway 115*

The County contends it was not responsible for the misdirected sign as a matter of law because the sign was owned and controlled by the State.  Plaintiffs counter that this fact is immaterial because the County owned and/or controlled the land upon which the sign was placed.  Plaintiffs further argue that ownership of the sign and/or the land upon which the sign was placed is not dispositive because even assuming the State owned the land and sign, a public entity may have a duty to protect (including to warn) against a condition on adjacent property that makes the defendant's property dangerous.  We agree with this latter argument and determine it is applicable here.

Section 830, subdivision (a) provides that a "dangerous condition" is "a condition of property that creates a substantial . . . risk of injury when such property *or adjacent property* is used with due care in a manner in which it is reasonably foreseeable that it will be used."  (Italics added.)  The California Law Revision Commission comments to section 830 state:  "A public entity may be liable only for dangerous conditions of its own property.  *But its own property may be considered dangerous if it creates a substantial risk of injury to . . . persons on adjacent property*; *and its own property may be considered dangerous if a condition on the adjacent property exposes those using the public property to a substantial risk of injury*."  (Cal. Law Revision Com. com., 32 pt. 2 West's Ann. Gov. Code (2012 ed.) foll. § 830, p. 7, italics added; see *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148 (*Bonanno*).)  These comments reflect the "intent . . . of the legislators who subsequently enacted" the statute.  (*Bonanno, supra*, at p. 148.)

12

"[C]onsistent with the Law Revision Commission comment," courts have long "recognized that hazards present on adjoining property may create a dangerous condition of public property when users of the public property are necessarily exposed to those risks." (*Bonanno*, *supra*, 30 Cal.4th at p. 149; see, e.g., *Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292, 298-299; *Bassett v. Lakeside Inn, Inc.* (2006) 140 Cal.App.4th 863, 868-869; *County of Ventura v. City of Camarillo* (1978) 80 Cal.App.3d 1019, 1025 ["[i]t is no defense in this case that the eventual dangerous condition that caused the accident was on property outside [the City's] jurisdiction"]); *Branzel v. Concord* (1966) 247 Cal.App.2d 68, 75 [city liable where private electric company's power lines on property adjacent to a city-owned model airplane park created a dangerous condition of the park when the lines exposed those using the park to a risk of harm]; *De La Rosa v. City of San Bernardino* (1971) 16 Cal.App.3d 739, 745-746 (*De La Rosa*); *Bakity v. County of Riverside* (1970) 12 Cal.App.3d 24, 30-31 (*Bakity*) [even if trees were located on adjacent property "jury could nevertheless have reasonably inferred that by reason of their proximity to the intersection they exposed motorists using the highway to a substantial risk of injury"]; *Dudum v. City of San Mateo* (1959) 167 Cal.App.2d 593, 597 [trees on private property obscured stop sign creating a dangerous condition on city road]; *Rose v. County of Orange* (1949) 94 Cal.App.2d 688, 690-693.)

Under this settled authority, a public entity may be held responsible for failing to protect individuals from foreseeable dangers posed to those who use its property, even if the danger stems from a condition on adjacent property. "[A] public entity can be held liable for an accident caused by a condition that exists on property adjacent to a public

13

highway if the condition ' "is so connected with or in such proximity to the traveled portion of the highway as to render it unsafe to those traveling thereon." ' " (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 841(*Carson*).)  In this case, the misdirected stop sign created a dangerous condition and made driving unsafe on the County-owned road.  Although the County may not have had the power or duty to repair the sign, it had the authority to warn drivers on County-owned Shank Road about this condition.

The County argues that even if it "arguably had a duty to warn [drivers on the] County-owned . . . Shank Road of the potential danger created by the damaged stop sign," it owed no duty to plaintiffs who were driving on the state-owned Highway 115. In asserting this argument, the County acknowledges that the misdirected stop sign "made it more dangerous for vehicles traveling on either Shank Road *or* Highway 115 . . . to enter into the intersection," but argues that it cannot be held legally responsible because "the damaged stop sign did not make Shank Road more dangerous, but only made the [state-owned] intersection more dangerous."  (Italics added.)

This line of reasoning fails on several grounds.  First, the County's attempt to separate the stop sign from the condition of Shank Road is unpersuasive.  The County argues the only relevant defect was the condition of the stop sign, claiming there was nothing "unusually 'dangerous' about Shank Road . . . ."  However, assuming the truth of plaintiffs' factual statement that the stop sign was misdirected and appeared to drivers on Shank Road that it was intended for Highway 115 drivers, Shank Road *became* a hazardous road, and *this* hazard placed drivers on the state-owned Highway 115 in

14

substantial danger. The sign and the road were necessarily intertwined for purposes of dangerous condition analysis. As defined in the statutes, " '[d]angerous condition' means a condition of property that creates a substantial . . . risk of injury when such property or adjacent property is used with due care . . . ." (§ 830, subd. (a).) The misdirected stop sign created a dangerous condition on County-owned Shank Road and *this* dangerous condition created a substantial risk of injury to those driving on Highway 115 near Shank Road. Because of the misdirected stop sign, Shank Road became dangerous to drivers on Highway 115.

The County contends that Shank Road was not in a " 'dangerous condition' " because it was "physically unchanged" after the stop sign was damaged. However, the statutes do not require a physical change on the property to establish a dangerous condition. As explained by the California Supreme Court, although a "dangerous condition" generally "exists when public property is physically damaged, deteriorated, or defective . . . , public property has also been considered to be in a dangerous condition 'because of . . . latent hazards associated with its normal use.' " (*Bonanno, supra*, 30 Cal.4th at pp. 148-149.) Here, plaintiffs' statement of their evidence supported that Shank Road contained or constituted a latent hazardous condition because with a speed limit of 55 miles per hour and a misdirected stop sign, it appeared to drivers that they had the right-of-way and there was no reason to slow or stop. Plaintiffs' offer of proof further showed that drivers on Shank Road would not see the intersection until they came near Highway 115. Viewing the totality of the circumstances, a factfinder could conclude that these conditions created a risk of substantial danger to Highway 115 drivers who had no

15

way of knowing of the hazard. The County arguably had the authority and ability to prevent injuries arising from this risk by warning drivers on Shank Road that they needed to stop and/or that they did not have the right-of-way (pending the sign repair). (See § 830, subd. b).)

Further contrary to the County's assertions, the fact that the State may have "owned" the Highway 115/Shank Road intersection does not preclude liability. The courts have recognized that a public entity may be held liable for a dangerous condition if the dangerous condition contributed to the injury, even if the actual injury takes place on property that is not owned by the public entity. (See *Bonanno, supra*, 30 Cal.4th at p. 151 [rejecting defendant's "contention that it cannot be liable for an injury occurring on property (the street) it neither owned nor controlled"]; *Holmes v. City of Oakland* (1968) 260 Cal.App.2d 378, 390 [finding no precedential support for the proposition that "the injury must occur on the public property in order for liability to attach"]; *Rose v. County of Orange, supra*, 94 Cal.App.2d at pp. 690-693 [county liable where plaintiffs were injured in unprotected ditch along state road that intersected county road].)

We recognize that none of these decisions is precisely identical to the facts here because the County did not own the originating defect (stop sign) *or* the property where the accident occurred (intersection). But the general principles of these cases logically apply. For example, in *Bonanno* the "dangerous condition" of public property was the *location* of a bus stop near a dangerous uncontrolled crosswalk. (*Bonanno, supra*, 30 Cal.4th at pp. 146-156.) The *Bonanno* court held that the defendant owner of the bus stop (a public transit district) could be held liable under section 835 even though the

16

plaintiff was injured in the crosswalk of a street that it "neither owned nor controlled." (*Bonanno, supra*, at p. 151.)  The court reasoned that the defendant "owned and controlled its own bus stop, and a condition of *that* property, its physical situation, caused users of the bus stop to be at risk from the immediately adjacent property . . . ."  (*Ibid.*)

As in *Bonanno* it was a condition of the County's own property (Shank Road when used with the accompanying misdirected stop sign) that caused users of an adjacent property (here Highway 115; in *Bonanno* the crosswalk) to be at risk.  Plaintiffs' asserted facts show their injuries were proximately caused by the Shank Road driver who was misled by the defective stop sign to believe he had the right-of-way at the intersection. This constitutes a dangerous condition on County property that created a reasonably foreseeable risk of the kind of injury plaintiffs suffered and thus was sufficient for section 835 liability.

### 2.  *Notice and Adequacy of Time To Take Corrective Measures*

The County alternatively contends it could not be held liable under section 835 because its high-level or managerial employees did not have sufficient notice and opportunity to remedy the dangerous condition.

To establish liability under section 835, the plaintiff must show either:  (1) a public employee's "negligent or wrongful act or omission . . . created the dangerous condition" or (2) "[t]he public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."  (§ 835, subds. (a), (b).)

17

In this case, plaintiffs relied on the second (notice) theory, and asserted the County had actual notice through facts showing Officer Badena discovered the defect about 55 minutes before the collision and reported the problem to his dispatcher. Plaintiffs identified facts showing the County had the opportunity and ability to protect against the danger because Deputy Badena had safety equipment in his vehicle that he could have used to warn eastbound Shank Road drivers of the misdirected signal until the sign could be repaired. Plaintiffs' counsel also stated that he intended to call expert witnesses who would opine that providing such warnings before leaving the scene was within the course and scope of Deputy Badena's job duties.

For purposes of the nonsuit motion, the County does not dispute that these facts establish Deputy Badena had actual notice of the dangerous condition a sufficient time before the accident to have taken reasonable measures to protect (warn) against the dangerous condition. The County further does not dispute that providing such warnings fell within the scope of Deputy Badena's official duties to enhance road safety and prevent traffic accidents. According to the offer of proof, Deputy Badena was specifically trained to deal with situations of defective traffic signs and had the equipment to provide warning and other safety measures.

But the County argues that this notice and opportunity to protect does not trigger section 835 liability because "as a matter of law, the public entity's management and policymakers must be given time after receiving notice of the purported 'dangerous condition' from lower-level employees to assess the degree of potential danger, review resources and personnel that are available to deal with the purported 'dangerous

18

condition,' and on an as-needed and as-available basis, assign personnel to or implement procedures to warn the public about it." The County maintains that under section 835, "the public entity must be given sufficient reasonable time to assign personnel to resolve a dangerous condition without requiring that the public employee who first discovers that dangerous condition must indefinitely remain on the scene to warn others of the danger until the 'cleanup' crews arrive."

The County cites no authority—not a single case or statute or secondary source—to support this argument and it is inconsistent with applicable law.

It has long been settled that imputed notice, as defined by ordinary agency rules, satisfies the notice requirement of section 835. (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 835.) As the high court explained, section 835's predecessor statute imposed liability on public entities for dangerous conditions of public property "only when the governing board or person 'authorized to remedy the condition' had 'knowledge or notice' " of the dangerous condition. (*Brown, supra*, 4 Cal.4th at p. 835.) However, in enacting section 835 in 1963, the Legislature abolished this requirement. It elected to make " '[t]he ordinary rules for imputing the knowledge of an employee to an employer applicable to public entities just as they are applicable to private owners and occupiers of land.' " (*Brown, supra*, at p. 835, quoting 4 Cal. Law Revision Com. Rep. (Jan. 1963) p. 825.) The Law Revision Commission found those rules to be "sensible and workable." (4 Cal. Law Revision Com. Rep., *supra*, at p. 825.)

Under these rules, the imputation of notice and duty to protect occurs if the agent possessed the relevant knowledge in the course and scope of his or her employment and

19

had the ability and authority to take effective remedial action. (See *Carson, supra*, 36 Cal.3d at p. 844 [evidence that "police officers regularly patrolled the intersection" supported a finding that city had constructive notice of sign that made intersection dangerous]; *Straughter v. State of California* (1976) 89 Cal.App.3d 102, 109-112 [state had sufficient notice of existence of dangerous condition of road through state highway superintendent's awareness of condition within hours before the accident]; *Briggs v. State of California* (1971) 14 Cal.App.3d 489, 496 ["evidence was sufficient to show actual knowledge of the dangerous condition on the part of at least one person who admittedly had authority to remedy such situation"]; Civ. Code, § 2332; 2 Coates, et al., Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2014) § 12.46, p. 923.)

The applicability of these principles to section 835 is supported by section 840.2, which governs individual public employee liability for a dangerous condition of public property. Section 840.2, subdivision (b) states a public employee may be held liable if:

> "[t]he employee had the authority and it was his responsibility to take adequate measures to protect against the dangerous condition at the expense of the public entity and the funds and other means for doing so were immediately available to him, and he had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

By providing for individual liability if an employee had the requisite notice, means, authority and resources, the Legislature necessarily intended that liability may be triggered

20

even if a supervisor or a "policymaker" did not have an extended period to reflect on the situation.[4]

For purposes of the nonsuit motion, Deputy Badena's awareness of the problem and his authority and opportunity to take minimal remedial measures were sufficient to satisfy the notice element of section 835, subdivision (b). A jury could conclude that a peace officer, whose job responsibilities include protecting the motoring public from road hazards, who is trained and equipped to handle situations like the misdirected sign, *and who has the tools necessary to do so at his immediate disposal*, would have the authority and ability to take measures to protect the public from the defective stop sign, and that this notice and opportunity to act can be imputed to Deputy Badena's employer. (See *Straughter v. State of California, supra*, 89 Cal.App.3d at p. 112 [sufficient evidence to support jury's implied findings that the state had notice and opportunity to protect against dangerous icy highway where it was "uncontroverted that no warnings were given, although [highway foreman] had amber lights in his truck for that purpose"].)

The County argues that imposing normal agency principles in this situation ignores "the real world, where at any given time there are multiple concurrent demands upon its personnel, most prominently its law enforcement personnel, for the delivery of immediate services." Although we agree these factors are relevant in the statutory analysis, they do not bar liability here as a matter of law.

---

4　In noting the contents of section 840.2, we do not intend to define the scope of an individual employee's liability for a dangerous condition. The issue here concerns only the public entity's liability and neither party has briefed, nor have we analyzed, the precise parameters of individual liability under section 840.2.

Under section 835.4, a public entity cannot be held liable for a dangerous condition if its actions or its failure to take action were "reasonable." The statute directs that "the reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury." (§ 835.4, subd. (b).) Under this standard, a jury may consider the reasonableness of the County's actions (including its competing demands) in determining liability, but the facts do not establish that the actions of the County (and/or its authorized agents) were reasonable as a matter of law.

The County argues that public policy favors limiting liability under the facts here. However, the scope of a public entity's liability is determined strictly by the statute; there is no room for a trial court or this court to impose its own policy views in determining whether the plaintiffs should or should not be entitled to recover.

### 3. *Claimed Immunities*

The County contends the court's order can be justified based on several statutory immunities. None of these defenses bars plaintiffs' claims at the nonsuit stage.

### a. *Section 830.4*

County first contends the nonsuit was proper because it is immune under section 830.4 for its failure to install a stop sign at the intersection.

Section 830.4 states: "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control

22

signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings . . . ."  Interpreting this code section, a Court of Appeal held a public entity is absolutely immune from section 835 claims alleging a dangerous condition based on the entity's *removal* of a stop sign.  (*City of South Lake Tahoe v. Superior Court* (1998) 62 Cal.App.4th 971 (*South Lake Tahoe*).  Relying on *South Lake Tahoe*, the County argues it was immune from liability for the condition of the stop sign.  This reliance is misplaced.

In *South Lake Tahoe*, the plaintiff and the defendant were both injured in a collision in an intersection that generally had stop signs for eastbound/westbound traffic.  (*South Lake Tahoe, supra*, 62 Cal.App.4th at pp. 973-974.)  Earlier in the day, there had been another accident, and the stop sign controlling westbound traffic had been knocked down and had not been replaced.  (*Id.* at p. 974.)  Both the plaintiff and the defendant sued the city, alleging the absence of a stop sign for westbound traffic created a dangerous condition of public property under section 835.  (*South Lake Tahoe, supra*, at p. 974.)  The city moved for summary judgment, claiming that section 830.4 precludes liability as a matter of law.  The superior court denied the motion, and the reviewing court reversed.  (*Id.* at pp. 974-975.)

The Court of Appeal reasoned that because section 830.4 provides that a public entity has "no duty to provide a stop sign in the first place," the city cannot "become liable if the sign is removed, whatever the reason for the removal be.  . . . To conclude otherwise would require us to accept the proposition that once the stop sign . . . was in place it could never be removed with impunity, and that motorists . . . could forever after

23

rely on its presence. This reasoning . . . finds no support in statute or case law. . . . [¶] [A]t the time of the accident, westbound vehicles . . . were entering an uncontrolled intersection . . . and drivers were subject to the rules of the road applicable at such a crossing. . . . [The city] 'cannot be charged with foreseeing that a motorist will recklessly disobey traffic laws . . . .' 'At some point, citizens must take responsibility for their conduct when there is an obvious roadway hazard . . . . The government cannot provide round-the-clock staffing to respond to every eventuality, particularly when the need to take precautions is self-evident and the law is clear on how motorists must behave under the circumstances. . . . Nothing in the record indicates that defendant city had a duty to place a stop sign [at the intersection], or that, having done so, it was obligated to keep the sign in place indefinitely." (*South Lake Tahoe, supra*, 62 Cal.App.4th at pp. 978-979.)

In so ruling, the court distinguished the line of decisions rejecting the section 830.4 governmental immunity defense where the parties sought relief for injuries resulting from claimed "obscured stop signs." (*South Lake Tahoe, supra*, 62 Cal.App.4th at pp. 976-977; see *Bakity, supra*, 12 Cal.App.3d at pp. 30-31 [section 840.4 immunity unavailable where sign was deceptive because it was located far from where stop was required]; *De La Rosa, supra*, 16 Cal.App.3d 739 [stop sign was positioned in such a way that it was obscured from view by trees and shrubbery].) The *South Lake Tahoe* court explained that "*Bakity* and *De La Rosa* demonstrate the principle that while a public entity has no obligation to provide stop signs, if it does so in such a way that the sign itself creates or becomes a dangerous condition, liability may ensue." (*South Lake Tahoe, supra*, 62 Cal.App.4th at p. 977; see *Chowdhury v. City of Los Angeles* (1995) 38

24

Cal.App.4th 1187, 1195.)  The court found those cases were inapplicable because the plaintiffs "rest their claim of municipal liability on the complete absence of such a sign, rather than its deceptive location."  (*South Lake Tahoe, supra*, at p. 977; see *Chowdhury, supra*, 38 Cal.App.4th at pp. 1194-1196.)

On the section 830.4 issue, this case is analogous to *Bakity* and *De La Rosa,* and materially different from *South Lake Tahoe*.  According to plaintiffs' offer of proof, the County's liability was not based on plaintiffs' claim that the County had failed to "provide" a stop sign, or had improperly removed the stop sign.  Instead, it was based on the County's failure to warn about a stop sign that appeared to face north rather than east, and thus had the potential to confuse eastbound Shank Road drivers into believing they had the right-of-way, creating a substantial risk of harm to Highway 115 drivers.

### b.  *Section 820.2*

The County next contends it was immune from liability under the discretionary act immunity statute.  (§ 820.2.)  The County maintains that Deputy Badena's decision to leave the scene without taking any action to protect against an accident was a discretionary judgment call that cannot be the basis for liability under section 820.2.

Section 820.2 states:  "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Under this plain language, the discretionary immunity applies to liability of a public *employee*, and not to a public entity.  (*Winig v. State of California* (1995) 37 Cal.App.4th 1772, 1778-1779, fn. 4.)  The discretionary immunity rule bars *public entity*

25

liability only if the claim is based on a vicarious liability theory. (*Ibid.*) A public entity cannot be held vicariously liable for the acts of an individual employee if the employee is immune from those acts. (§ 815.2, subd. (b).) But this rule is inapplicable here because the dangerous condition claim is a direct claim, not a vicarious liability claim. (§ 835; *Winig, supra*, 37 Cal.App.4th at pp. 1778-1779, fn. 4; see 4 Cal. Law Revision Com. Rep., *supra*, at p. 854 [section 835 "is not subject to the discretionary immunity that public entities derive from Section 815.2, for this chapter itself declares the limits of a public entity's discretion in dealing with dangerous conditions of its property"].)

c. *Section 845*

The County additionally contends it is immune from plaintiffs' dangerous condition claim based on section 845, which provides: "Neither a public entity nor a public employee is liable for failure to . . . provide police protection service or . . . for failure to provide sufficient police protection service." (§ 845.)

This argument is forfeited because it was not raised in the proceedings below. (See *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830; *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872-873.) The rule prohibiting a party from raising arguments on appeal for the first time applies with particular force to motions for a nonsuit. Generally, after an opening statement, a nonsuit may be granted only on the grounds asserted by the opposing party. (See *Lawless v. Calaway* (1944) 24 Cal.2d 81, 94; *Timmsen v. Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 868.)

Moreover, this newly asserted contention does not establish grounds for a nonsuit. The basis for plaintiffs' claim is not the failure to provide a "police protection service."

26

(§ 845; see *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 815.)  It is that the condition of Shank Road was dangerous (given the misdirected sign) which placed plaintiffs (or their predecessors) at substantial risk of injury.  The Legislature has specifically imposed a duty on a public entity to "protect against" a dangerous condition on its property if the elements of section 835 are satisfied.  (§ 835.)  "Protect against" includes "providing safeguards against a dangerous condition, or warning of a dangerous condition."  (§ 830, subd. (b).)  There is nothing in this statute or section 845 indicating the Legislature intended to create an exception to this statutorily-imposed exception to immunity principles where the "protect against" obligation involves a law enforcement officer.  If a plaintiff proves a dangerous condition of public property and establishes each of the statutory elements, the fact that a law enforcement officer would function to "protect against" the risk does not establish section 845 immunity as a matter of law.

### 4. *Conclusion*

We determine each of County's grounds for a nonsuit on the section 835 claim is without merit.  Assuming the truth of plaintiffs' asserted facts, the record does not show plaintiffs are barred from recovering on their dangerous condition claim as a matter of law.  In reaching this conclusion, we do not intend to suggest our view on the merits of the section 835 claim.  Whether plaintiffs can successfully prove their claim and/or whether the County can successfully prove its affirmative defenses, will be matters to be decided in the remanded proceedings.

27

II. *Negligence*

Plaintiffs next contend the court erred in granting nonsuit on their section 815.2 negligence claim against the County.5  This claim is based on vicarious liability principles, i.e., plaintiffs' assertion that the County is liable for Deputy Badena's alleged negligence in failing to protect against the risk of harm.

The County maintains it is not vicariously liable under section 815.2 because Deputy Badena owed no duty to plaintiffs and therefore his alleged failure to protect or warn would not give "rise to a cause of action" under section 815.2.  We agree with this contention.  We thus do not reach the County's alternate contention that even if Deputy Badena owed plaintiffs a duty, the discretionary immunity defense bars the vicarious liability claim.

" '[L]aw enforcement officers, like other members of the public, generally do not have a legal duty to come to the aid of [another] person . . . .' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1129; see *Camp v. State of California* (2010) 184 Cal.App.4th 967, 975 (*Camp*); *Zepeda v. City of Los Angeles* (1990) 223 Cal.App.3d 232, 235-236.)  An exception applies where there is a " 'special relationship' " between plaintiff and defendant, under which liability may be imposed "if an officer voluntarily assumes a

---

5      Section 815.2 states:  "(a)  A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.  [¶]  (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

duty to provide a particular level of protection, and then fails to do so . . . or if an officer undertakes affirmative acts that increase the risk of harm to the plaintiff." (*Zelig, supra*, 27 Cal.4th at p. 1129.) In these circumstances, liability is imposed based on the officer's misfeasance, rather than his or her nonfeasance. (See *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 716-717; *Camp, supra*, 184 Cal.App.4th at pp. 976-977.)

In this case, plaintiffs concede there are no facts showing a special relationship between Deputy Badena and plaintiffs (and/or their predecessors). They nonetheless urge this court to recognize a new duty of care owed by a law enforcement officer who fails to warn of a dangerous traffic condition. In support, they engage in a lengthy analysis of the factors described in *Rowland v. Christian* (1968) 69 Cal.2d 108, 119 (*Rowland*).) We find this analysis to be unhelpful.

Absent a statutory basis, a law enforcement officer's failure to act does not support a finding that he or she is *individually liable* to a citizen allegedly injured by the nonfeasance. This is true even if the officer was at the scene and his or her actions could have prevented substantial injury. (*Camp, supra*, 184 Cal.App.4th at pp. 977-979.) The decision whether a defendant owes a duty to an individual plaintiff does not depend on the particular facts of the case. Rather, a court must focus on whether the category of negligent conduct warrants imposing a duty to a class of persons. (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 772.) The courts have long adhered to the rule that a police officer does not owe a duty to a private citizen absent a statutory duty, special relationship, or affirmative misconduct. The *Rowland* factors cannot be used as a vehicle to undermine this well-settled rule in this case.

29

Plaintiffs' reliance on *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 866 is misplaced. In *Catsouras*, plaintiffs alleged that two CHP officers emailed "horrific" photographs of an 18-year-old who was decapitated in a fatal automobile accident. (*Id.* at p. 863.) According to the Court of Appeal, the photograph of this young woman's decapitated remains were "strewn about the Internet and spit back at the family members, accompanied by hateful messages." (*Ibid.*) Applying the *Rowland* factors, the court found the CHP and its officers "owed plaintiffs a duty of care not to place decedent's death images on the Internet for the purposes of vulgar spectacle." (*Catsouras, supra*, at p. 864.) The court reasoned: "The CHP here undertook to perform an investigation and to collect evidence. It was not in furtherance of the investigation, the preservation of evidence, or any other law enforcement purpose, to deliberately make a mutilated corpse the subject of lurid gossip. . . . Under the extraordinary facts of this case, [the CHP officers] owed plaintiffs a duty not to exploit CHP-acquired evidence in such a manner to place them at foreseeable risk of grave emotional distress." (*Id.* at p. 864.)

This analysis is inapplicable here where there was no evidence that Deputy Badena engaged in affirmative misconduct. The *Catsouras* plaintiffs did not seek to hold the CHP officers liable for their failure to act. Rather, their negligence claim was based on allegations they engaged in *affirmative* actions of disseminating "gruesome death images" to the officers' friends and relatives who had "no involvement in official CHP activities." (*Catsouras, supra*, 181 Cal.App.4th at p. 884.) The facts here are not analogous.

Our conclusion is not undermined by our earlier determination that plaintiffs stated a viable cause of action under section 835. Although the dangerous condition cause of action is based, in part, on plaintiffs' claim that the County had sufficient notice and time to have taken protective measures *through Deputy Badena's presence at the scene*, this does not necessarily mean that Deputy Badena owed a negligence duty to the individual plaintiffs in this case. Plaintiffs' negligence claim is based on a vicarious liability theory, and under settled tort principles Deputy Badena owed no negligence duty to plaintiffs. Plaintiffs' section 835 cause of action is a direct action against the County and seeks to impose liability based on proof of section 835's statutory elements. The fact that these two different exceptions to governmental immunity lead to different results does not mean the results are incorrect. Each exception to governmental immunity must be analyzed under its own terms.

## DISPOSITION

The court is ordered to vacate its judgment granting a nonsuit on plaintiffs' dangerous condition (§ 835) and negligence claims against the County. The court is ordered to enter a new order granting a nonsuit on plaintiffs' negligence claim against the County, and denying the motion for nonsuit on the dangerous condition cause of action. The parties to bear their own costs on appeal.

HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


HUFFMAN, J.